ORIGIN._

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

v.

RUI-SIANG LIN,
  a/k/a "Ruisiang Lin,"
  a/k/a "林睿庠,"
  a/k/a "Pharoah,"
  a/k/a "faro,"

Defendant.

**SEALED INDICTMENT**

24 Cr. ___

24 CRIM 178

## COUNT ONE
### (Continuing Criminal Enterprise)

The Grand Jury charges:

1. From at least in or about October 2020, up to and including at least in or about March 2024, in the Southern District of New York and elsewhere, RUI-SIANG LIN, a/k/a "Ruisiang Lin," a/k/a "林睿庠," a/k/a "Pharoah," a/k/a "faro," the defendant, was the principal administrator of Incognito Market, which was one of the largest illegal narcotics marketplaces on the internet. Incognito Market sold at least approximately $100,000,000 worth of heroin, cocaine, methamphetamine, LSD, other illegal narcotics, and misbranded prescription medication. Those sales comprise more than one thousand kilograms of narcotics, misbranded prescription medication, and other illicit products—including at least 364 kilograms of cocaine, 295 kilograms of methamphetamine, and 92 kilograms of MDMA.

2. Incognito Market was available globally to anyone with internet access, including users in the Southern District of New York. Incognito Market appears to have been designed to foster seamless narcotics transactions across the internet and to incorporate features of many

legitimate e-commerce sites, including, for example, branding, advertising, and customer service. Users logging into Incognito Market were greeted with the following splash page:



3.     Incognito Market launched in or about October 2020. Since that time, and through at least in or about March 2024, Incognito Market could be accessed via the internet using a widely available encrypted and anonymous internet browsing software known as the "Tor" web browser. Tor enables individuals to conceal their true IP address to access what is commonly referred to as the "darkweb" or "darknet." Incognito Market does not sell narcotics directly to customers. Instead, Incognito Market is an e-commerce platform that enables its "customers" to purchase narcotics from "vendors," who advertise narcotics for sale on Incognito Market. An example of narcotics listings on Incognito Market for heroin are reproduced below:



4.      The principal administrator of Incognito Market was known by the alias "Pharoah," which at times was spelled as "Pharoah" or "faro." At all times relevant to this Indictment, RUI-SIANG LIN, a/k/a "Ruisiang Lin," a/k/a "林睿庠," a/k/a "Pharoah," a/k/a "faro," the defendant, operated the "Pharoah" aliases and controlled all aspects of Incognito Market. LIN had ultimate control over more than one thousand vendors (those who sell narcotics on Incognito Market), more than 200,000 customers (those who buy narcotics on Incognito Market), and at least one other employee who assisted LIN in the management of the site. LIN also implemented policies for the site, controls its severs, and its funds.

5.      As the principal administrator of Marketplace-1, RUI-SIANG LIN, a/k/a "Ruisiang Lin," a/k/a "林睿庠," a/k/a "Pharoah," a/k/a "faro," the defendant, profited the most from

Marketplace-1's activities.  As a result of LIN's control over Incognito Market, he has earned millions of dollars in profits.

6.      RUI-SIANG LIN, a/k/a "Ruisiang Lin," a/k/a "林睿庠," a/k/a "Pharoah," a/k/a "faro," the defendant, used the "Pharoah" alias when making announcements on Incognito Market; in various internet forums that LIN used to promote Incognito Market; and while in communication with others who worked under LIN's direction on Incognito Market.  For example, after Incognito Market's servers disconnected for a period of time, LIN (using the alias "Pharoah") attempted to reassure the Incognito Market customer base by posting the following on a forum that promotes darknet market issues:



**23**

### December 10th Postmortem
by **/u/pharoah**  `Incogbot`  · 2 weeks ago* in **/d/IncognitoMarket**
**All services are restored and once again functional.**

7.      Both "vendors" and "customers" were required to register with Incognito Market and to be approved by Incognito Market employees.  Once registered and approved, each vendor was permitted to list for sale virtually any illegal narcotic they wished, for any price they chose. "Customers" were also required to register with Incognito Market.  After registering, customers were able to select which narcotics to purchase from which vendor and to pay for those narcotics using cryptocurrency, in transactions facilitated by a payment platform that Incognito Market described as a "bank" (the "Incognito Bank").  Both vendors and customers used the Incognito Bank to conduct narcotics transactions, which meant that both vendors and customers deposited money with Incognito Market and used Incognito Market to exchange money.  Accordingly, both customers and vendors demonstrated considerable trust in Incognito Market and its

administrator—*i.e.*, RUI-SIANG LIN, a/k/a "Ruisiang Lin," a/k/a "林睿庠," a/k/a "Pharoah,"
a/k/a "faro," the defendant—because once deposited, customers and vendors relied on LIN to
process withdrawal requests.  In exchange for its services, Incognito Market earned approximately
5% of the purchase price of every narcotic sold on Incognito Market.  A screenshot of the landing
page for the Incognito Bank is reproduced below:



8.      In or about March 2024, RUI-SIANG LIN, a/k/a "Ruisiang Lin," a/k/a "林睿庠,"
a/k/a "Pharoah," a/k/a "faro," the defendant, suddenly closed Incognito Market and refused to

return funds vendors and customers held with the Incognito Bank. Instead, LIN threatened to disclose on the internet each users' transaction history unless the user paid LIN an additional fee. In a post about this fee (reproduced below), LIN wrote, in part, "YES, THIS IS AN EXTORTION!!"



Statutory Allegations

9.      From at least in or about October 2020, up to and including at least in or about March 2024, in the Southern District of New York, and elsewhere, RUI-SIANG LIN, a/k/a "Ruisiang Lin," a/k/a "林睿庠," a/k/a "Pharoah," a/k/a "faro," the defendant, engaged in a continuing criminal enterprise (the "Continuing Criminal Enterprise"), in that LIN knowingly and intentionally participated in a continuing series of violations of Title 21, United States Code, Chapter 13, Subchapters I and II, including, among other violations, Violations One through Four set forth below, which were undertaken by LIN in concert with five and more other persons with respect to whom LIN occupied a position of organizer, a supervisory position, and any other position of management, and from which LIN obtained substantial income or resources.

Violation One

10.      From at least in or about October 2020, up to and including at least in or about March 2024, in the Southern District of New York, and elsewhere, RUI-SIANG LIN, a/k/a "Ruisiang Lin," a/k/a "林睿庠," a/k/a "Pharoah," a/k/a "faro," the defendant, and others known

6

and unknown, knowingly and intentionally combined, conspired, confederated, and agreed together and with each other to violate the controlled-substance laws of the United States.

11.     It was a part and an object of the conspiracy that, RUI-SIANG LIN, a/k/a "Ruisiang Lin," a/k/a "林睿庠," a/k/a "Pharoah," a/k/a "faro," the defendant, and others known and unknown, would and did distribute and possess with intent to distribute a controlled substance, in violation of Title 21, United States Code, Section 841(a)(1).

12.     The controlled substances involved in the offense were (i) five kilograms and more of mixtures and substances containing a detectable amount of cocaine, in violation of Title 21, United States Code, Section 841(b)(1)(A); (ii) one kilogram and more of mixtures and substances containing a detectable amount of heroin, in violation of Title 21, United States Code, Section 841(b)(1)(A); (iii) 500 grams and more of mixtures and substances containing a detectable amount of methamphetamine, its salts, isomers, or salts of its isomers, in violation of Title 21, United States Code, Section 841(b)(1)(A); (iv) 10 grams and more of mixtures and substances containing a detectable amount of lysergic acid diethylamide (LSD), in violation of Title 21, United States Code, Section 841(b)(1)(A); (v) 100 kilograms or more of a mixture or substance containing a detectable amount of marihuana in violation of Title 21, United States Code, Section 841(b)(1)(B); (vi) mixtures and substances containing a detectable amount of Oxycodone, in violation of Title 21, United States Code, Section 841(b)(1)(C); (vii) mixtures and substances containing a detectable amount of ketamine, in violation of Title 21, United States Code, Section 841(b)(1)(C); (viii) mixtures and substances containing a detectable amount of Methylenedioxymethamphetamine ("MDMA"), in violation of Title 21, United States Code, Section 841(b)(1)(C)); (ix) mixtures and substances containing a detectable amount of amphetamine, in violation of Title 21, United States Code, Section 841(b)(1)(C); and (x) mixtures

7

and substances containing a detectable amount of fentanyl, in violation of Title 21, United States Code, Section 841(b)(1)(C), and 846.

## Violation Two

13.     From at least in or about October 2020, up to and including at least in or about March 2024, in the Southern District of New York, and elsewhere, RUI-SIANG LIN, a/k/a "Ruisiang Lin," a/k/a "林睿庠," a/k/a "Pharoah," a/k/a "faro," the defendant, and others known and unknown, intentionally, and knowingly did combine, conspire, confederate, and agree together and with each other to (i) import a controlled substance into the United States and into the customs territory of the United States from a place outside thereof, (ii) manufacture, distribute, and possess with intent to distribute a controlled substance, intending, knowing, and having reasonable cause to believe that such substance and chemical would be unlawfully imported into the United States and into waters within a distance of 12 miles of the coast of the United States, which controlled substances were mixtures and substances containing a detectable amount of heroin, cocaine, methamphetamine, Methylenedioxymethamphetamine ("MDMA"), and LSD in violation of Title 21, United States Code, Sections 952(a), 959(a), 960(a)(1), 960(a)(3), 960(b)(3), 963, and Title 18, United States Code, Section 2.

## Violation Three

14.     On or about January 4, 2024, in the Southern District of New York, and elsewhere, RUI-SIANG LIN, a/k/a "Ruisiang Lin," a/k/a "林睿庠," a/k/a "Pharoah," a/k/a "faro," the defendant, knowingly and intentionally distributed and possessed with intent to distribute a controlled substance, to wit, mixtures and substances containing a detectable amount of cocaine, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(C), and Title 18, United States Code, Section 2.

8

Violation Four

15.      From at least in or about October 2020, up to and including at least in or about March 2024, in the Southern District of New York, and elsewhere, RUI-SIANG LIN, a/k/a "Ruisiang Lin," a/k/a "林睿庠," a/k/a "Pharoah," a/k/a "faro," the defendant, delivered, distributed, and dispensed controlled substances by means of the internet, in a manner not authorized by law, and aided and abetted such activity, in violation of Title 21, United States Code, Sections 841(h), and Title 18, United States Code, Section 2.

16.      The controlled substances that RUI-SIANG LIN, a/k/a "Ruisiang Lin," a/k/a "林睿庠," a/k/a "Pharoah," a/k/a "faro," the defendant, delivered, distributed, and dispensed by mean of the internet, were (i) five kilograms and more of mixtures and substances containing a detectable amount of cocaine, in violation of Title 21, United States Code, Section 841(b)(1)(A); (ii) one kilogram and more of mixtures and substances containing a detectable amount of heroin, in violation of Title 21, United States Code, Section 841(b)(1)(A); (iii) 500 grams and more of mixtures and substances containing a detectable amount of methamphetamine, its salts, isomers, or salts of its isomers, in violation of Title 21, United States Code, Section 841(b)(1)(A); (iv) 10 grams and more of mixtures and substances containing a detectable amount of lysergic acid diethylamide (LSD), in violation of Title 21, United States Code, Section 841(b)(1)(A); (v) 100 kilograms or more of a mixture or substance containing a detectable amount of marihuana in violation of Title 21, United States Code, Section 841(b)(1)(B); (vi) mixtures and substances containing a detectable amount of Oxycodone, in violation of Title 21, United States Code, Section 841(b)(1)(C); (vii) mixtures and substances containing a detectable amount of ketamine, in violation of Title 21, United States Code, Section 841(b)(1)(C); (viii) mixtures and substances containing a detectable amount of MDMA, in violation of Title 21, United States Code, Section

9

841(b)(1)(C)); (ix) mixtures and substances containing a detectable amount of amphetamine, in violation of Title 21, United States Code, Section 841(b)(1)(C); (x) mixtures and substances containing a detectable amount of fentanyl, in violation of Title 21, United States Code, Section 841(b)(1)(C).

Notice of Special Sentencing Factors

17.     From at least in or about October 2020, up to and including at least in or about March 2024, in the Southern District of New York, and elsewhere, RUI-SIANG LIN, a/k/a "Ruisiang Lin," a/k/a "林睿庠," a/k/a "Pharoah," a/k/a "faro," the defendant, was the principal administrator, organizer, and leader of the Continuing Criminal Enterprise and was one of several such principal administrators, organizers, and leaders, in which the continuing series of violations of Title 21, United States Code, Chapter 13, Subchapters I and II involved at least 300 times the quantity of mixtures and substances containing a detectable amount of cocaine, lysergic acid diethylamide ("LSD"), and methamphetamine, its salts, isomers, or salts of its isomers, described in Title 21, United States Code, Section 841(b)(1)(B); and from which the Continuing Criminal Enterprise received $10 million and more in gross receipts during a 12-month period of its existence for the manufacture, importation, and distribution of cocaine, heroin, LSD, and methamphetamine, its salts, isomers, or salts of its isomers, described in Title 21, United States Code, Section 841(b)(1)(B).

(Title 21, United States Code, Sections 848(a), 848(b), 848(c).)

**COUNT TWO**
**(Narcotics Conspiracy)**

The Grand Jury further charges:

18.     From at least in or about October 2020, up to and including at least in or about March 2024, in the Southern District of New York, and elsewhere, RUI-SIANG LIN, a/k/a

10

"Ruisiang Lin," a/k/a "林睿庠," a/k/a "Pharoah," a/k/a "faro," the defendant, and others known and unknown, intentionally, and knowingly did combine, conspire, confederate, and agree together and with each other to violate the narcotics laws of the United States.

19.     It was a part and an object of the conspiracy that RUI-SIANG LIN, a/k/a "Ruisiang Lin," a/k/a "林睿庠," a/k/a "Pharoah," a/k/a "faro," the defendant, and others known and unknown, would and did distribute and possess with intent to distribute a controlled substance, in violation of Title 21, United States Code, Section 841(a)(1).

20.     The controlled substances that RUI-SIANG LIN, a/k/a "Ruisiang Lin," a/k/a "林睿庠," a/k/a "Pharoah," a/k/a "faro," the defendant, conspired to distribute and possess with intent to distribute were (i) five kilograms and more of mixtures and substances containing a detectable amount of cocaine, in violation of Title 21, United States Code, Section 841(b)(1)(A); (ii) one kilogram and more of mixtures and substances containing a detectable amount of heroin, in violation of Title 21, United States Code, Section 841(b)(1)(A); (iii) 500 grams and more of mixtures and substances containing a detectable amount of methamphetamine, its salts, isomers, or salts of its isomers, in violation of Title 21, United States Code, Section 841(b)(1)(A); (iv) 10 grams and more of mixtures and substances containing a detectable amount of lysergic acid diethylamide (LSD), in violation of Title 21, United States Code, Section 841(b)(1)(A); (v) 100 kilograms or more of a mixture or substance containing a detectable amount of marihuana in violation of Title 21, United States Code, Section 841(b)(1)(B); (vi) mixtures and substances containing a detectable amount of Oxycodone, in violation of Title 21, United States Code, Section 841(b)(1)(C); (vii) mixtures and substances containing a detectable amount of ketamine, in violation of Title 21, United States Code, Section 841(b)(1)(C); (viii) mixtures and substances containing a detectable amount of Methylenedioxymethamphetamine ("MDMA"), in violation of

Title 21, United States Code, Section 841(b)(1)(C)); (ix) mixtures and substances containing a detectable amount of amphetamine, in violation of Title 21, United States Code, Section 841(b)(1)(C); and (x) mixtures and substances containing a detectable amount of fentanyl, in violation of Title 21, United States Code, Section 841(b)(1)(C).

(Title 21, United States Code, Section 846)

### COUNT THREE
### (Money Laundering - Concealment)

The Grand Jury further charges:

21.     From at least in or about October 2020, up to and including at least in or about March 2024, in the Southern District of New York, and elsewhere, RUI-SIANG LIN, a/k/a "Ruisiang Lin," a/k/a "林睿庠," a/k/a "Pharoah," a/k/a "faro," the defendant, knowing that the property involved in a financial transaction represented the proceeds of some form of unlawful activity, would and did conduct and attempt to conduct such a financial transaction, which transaction affected interstate and foreign commerce and involved the use of a financial institution which was engaged in, and the activities of which affected interstate and foreign commerce, and which in fact involved the proceeds of specified unlawful activity, to wit, narcotics trafficking, and conspiracy to commit narcotics trafficking, in violation of Title 21, United States Code, Sections 841 and 846, respectively, knowing that the transaction was designed in whole and in part to conceal and disguise the nature, the location, the source, the ownership, and the control of the proceeds of specified unlawful activity.

(Title 18, United States Code, Section 1956(a)(1)(B)(i), and 2)

## COUNT FOUR
### (Conspiracy to Sell Adulterated and Misbranded Medication)

The Grand Jury further charges:

22. From at least in or about October 2020, up to and including at least in or about March 2024, in the Southern District of New York, and elsewhere, RUI-SIANG LIN, a/k/a "Ruisiang Lin," a/k/a "林睿庠," a/k/a "Pharoah," a/k/a "faro," the defendant, and others known and unknown willfully and knowingly combined, conspired, confederated, and agreed together and with each other to commit offenses against the United States, to wit, selling adulterated and misbranded drugs in violation of Title 21, United States Code, Sections 331, 333(a)(2).

23. It was a part and an object of the conspiracy that RUI-SIANG LIN, a/k/a "Ruisiang Lin," a/k/a "林睿庠," a/k/a "Pharoah," a/k/a "faro," the defendant, and others known and unknown with the intent to defraud and mislead, would and did introduce and deliver for introduction into interstate commerce, and attempt to do the same, and would and did cause the introduction and delivery for introduction into interstate commerce, and attempt to do the same, of adulterated and misbranded drugs, as defined by 21 U.S.C. §§ 351(a)(1), 351(a)(3), 352(a), 352(b), 352(f), and 352(o), in violation of 21 U.S.C. §§ 331(a) and 333(a)(2), 333(i) to wit, LIN and others known and unknown sold misbranded and counterfeit medication over the internet.

24. In furtherance of the conspiracy and to effect its illegal objects, RUI-SIANG LIN, a/k/a "Ruisiang Lin," a/k/a "林睿庠," a/k/a "Pharoah," a/k/a "faro," the defendant, and others known and unknown, committed the following overt acts, among others, in the Southern District of New York and elsewhere:

a. On or about December 5, 2023, in the Southern District of New York, law enforcement officers received five tablets, which were purchased on Incognito Market operated by LIN and shipped by the seller on Incognito Market to an address in the Southern District of

New York. Those five tablets bore the mark of a particular licensed pharmaceutical manufacturer, but those five tablets were not, in fact, produced by that licensed manufacturer.

(Title 18, United States Code, Section 371.)

### FORFEITURE ALLEGATIONS

25.     As a result of committing the offense alleged in Count One of this Indictment, RUI-SIANG LIN, a/k/a "Ruisiang Lin," a/k/a "林睿庠," a/k/a "Pharoah," a/k/a "faro," the defendant, shall forfeit to the United States, pursuant to Title 21, United States Code, Section 853, any and all property constituting, or derived from, any proceeds obtained, directly or indirectly, as a result of said offense; any and all property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, said offense; and any and all interest in, claims against, and property and contractual rights affording a source of control over the continuing criminal enterprise described in Count One of this Indictment, including but not limited to a sum of money in United States currency representing the amount of proceeds traceable to the commission of the offense including the following specific property (the "Specific Property"):

a.      All currency, including cryptocurrency, on deposit in Binance Account No. ▮▮▮▮▮;

b.      All currency, including cryptocurrency, on deposit in Binance Account No. ▮▮▮▮▮;

c.      All currency, including cryptocurrency, on deposit in Binance Account No. ▮▮▮▮▮;

d.      All currency, including cryptocurrency, on deposit in Binance Account No. ▮▮▮▮▮

e. All currency, including cryptocurrency, on deposit in Kraken Account No. ███████████ ;

f. All currency, including cryptocurrency, maintained in Monero wallet

███████████████████████████████████

███████████████ ;

g. All currency, including cryptocurrency, maintained in Monero wallet

███████████████████████████████████

███████████████

26. As a result of committing the offense alleged in Count Two of this Indictment, RUI-SIANG LIN, a/k/a "Ruisiang Lin," a/k/a "林睿庠," a/k/a "Pharoah," a/k/a "faro," the defendant, shall forfeit to the United States, pursuant to Title 21, United States Code, Section 853, any and all property constituting, or derived from, any proceeds obtained, directly or indirectly, as a result of said offense and any and all property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, said offense, including but not limited to a sum of money in United States currency representing the amount of proceeds traceable to the commission of said offense including the Specific Property.

27. As a result of committing the offense alleged in Count Three of this Indictment, RUI-SIANG LIN, a/k/a "Ruisiang Lin," a/k/a "林睿庠," a/k/a "Pharoah," a/k/a "faro," the defendant, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(1), any and all property, real and personal, involved in said offense, or any property traceable to such property, including but not limited to a sum of money in United States currency representing the amount of property involved in said offense including the Specific Property.

28. As a result of committing the offense charged in Count Four of this Indictment,

RUI-SIANG LIN, a/k/a "Ruisiang Lin," a/k/a "林睿庠," a/k/a "Pharoah," a/k/a "faro," the defendant, shall forfeit to the United States, pursuant to Title 21, United States Code, Section 334 and Title 28, United States Code, Section 2461(c), any and all drugs that were adulterated or misbranded when introduced into or while in interstate commerce or while held for sale (whether or not the first sale) after shipment in interstate commerce, or which may not, under the provisions of section 311, 344, or 355 of this title, have been introduced into interstate commerce, including but not limited to a sum of money in United States currency representing the value of such property.

### Substitute Assets Provision

29.     If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

     a.     cannot be located upon the exercise of due diligence;

     b.     has been transferred or sold to, or deposited with, a third person;

     c.     has been placed beyond the jurisdiction of the Court;

     d.     has been substantially diminished in value; or

     e.     has been commingled with other property which cannot be subdivided without difficulty;

      f.      it is the intent of the United States, pursuant to Title 21, United States Code,

Section 853(p), to seek forfeiture of any other property of the defendant up to the value of the

above forfeitable property.

(Title 21, United States Code, Section 853.)

_____
FOREPERSON

_____
DAMIAN WILLIAMS
United States Attorney

17