**SHER TREMONTE LLP**

October 14, 2025

**FILED UNDER SEAL**

Hon. Colleen McMahon
United States District Judge
Southern District of New York
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl Street
New York, NY 10007

    Re: *United States v. Rui-Siang Lin*, No. 24 Crim. 178 (CM)

Dear Judge McMahon:

  We represent Rui-Siang Lin. We write on behalf of our client in response to the government's letter dated October 6, 2025, requesting that the Court permit the family of an individual who died from ingesting fentanyl purchased on the Incognito marketplace (the "Churchills") to address the Court at sentencing. ECF No. 38. We agree that the Court has discretion to consider any fact it wishes at sentencing, and we understand the Court's memo endorsement to indicate that it will permit the Churchills to speak. ECF No. 39. We are not asking the Court to reconsider that decision. We write instead to ensure that the Court has accurate context because the government's letter omits important information and mischaracterizes the defense's position with respect to how Mr. Churchill's death should be considered at sentencing.

  Absent from the government's submission is the fact that another administrator of the website—not Mr. Lin—was responsible for reviewing posts to ensure vendors had complied with the site's ban on fentanyl ████████████████████████████████████████████████████████████████████████████████████████████████ These facts do not take away Mr. Lin's culpability, but we believe they are significant to evaluating the scope of that culpability.

  To be clear, Mr. Lin is deeply aware of the Churchills' tragic loss and the harm that fentanyl causes communities. That is why he tried to put safeguards in place to prevent fentanyl from being sold on Incognito. Mr. Lin has accepted responsibility for his role as one of the principal administrators of Incognito[1] and for the reasonably foreseeable consequences of his actions through his guilty plea. Nothing we say here or that we intend to say at sentencing should be construed as making any excuse for his conduct or

---

[1] Contrary to the government's assertion, ECF No. 38 at 5 n.4, Mr. Lin has never disputed (and does not now dispute) that he was a principal administrator of Incognito, as evidenced, for example, by the leadership enhancement in his plea agreement.

diminishing his acceptance of responsibility. But this case is far more complicated and nuanced than the government suggests in its October 6 letter. █████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████[2]

### A. Mr. Lin Is Recruited to Join Incognito

In late 2020, two individuals, whose monikers on the darknet were "CurlyDock" and "Marriage Iguana," recruited Mr. Lin ("Pharoah") to assist in the creation of Incognito, a darknet drug marketplace. He agreed to help them and, together, they launched the Incognito marketplace in October 2020. Each administrator played a distinct role integral to the site's operation. For his part, Mr. Lin was responsible for the technical aspects of the site, including building the website, developing the code, and programming the payment system. Mr. Lin did not manage the consumer-facing aspects of Incognito, such as customer complaints or vendor-customer disputes. Nonetheless, he had a say in the site's policies, including what drugs could be sold on the site. Concerned about the dangers of fentanyl and opioids generally, Mr. Lin and his two original co-administrators banned the sale of all opioids on Incognito when the site first opened. The ban on all opioids was later lifted, but the prohibition on fentanyl remained, at Mr. Lin's insistence. Vendors and customers knew about the ban because it was posted on the site.

### B. ███████████████████████████

In its initial phase, from December 2020 until April 2022, Incognito experienced a modest amount of traffic. During that time, Incognito processed 6,634 orders, totaling just over a million dollars in sales. ██████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████

---

[2] Mr. Lin has documentary evidence produced by the government supporting the statements made in this letter and will provide them to the Court in his sentencing submission.



C.

---
3

As the government points out, the FBI in Los Angeles purchased M30 pills from RedLightLabs, the vendor whose product ultimately led to the death of Mr. Churchill. Similarly, as alleged in the Complaint, through undercover identities, the FBI made at least two purchases of M30 pills and one purchase of heroin through Incognito that tested positive for the presence of fentanyl. ECF No. 1, ¶¶ 20(e)(ii), (iii), (v).

### D. Mr. Lin Accepts Responsibility for His Central Role in Incognito and the Harm He Caused

He acknowledges that this was a foolish and inexcusable mistake, and, through his plea to Count Four (conspiracy to sell adulterated and misbranded medication in violation of 18 U.S.C. § 371), he has conceded it was reasonably foreseeable to a person in his position that fentanyl could be sold on Incognito, despite the safeguards he attempted to build into the site. will be relevant to the Court's consideration of Mr. Lin's jointly undertaken criminal activity and its balancing of the § 3553(a) factors—but those are not determinations that the Court need make now. Mr. Lin committed a serious crime, and he deserves to be punished. He willingly accepted a plea deal that requires a mandatory minimum sentence of ten years in prison. And Mr. Lin in no way minimizes the tragedy of Mr. Churchill's death or the pain of his loved ones. He hopes to speak to the Churchills at sentencing and convey his profound regret for their loss.[4]

### E. Sealing

The government has asked us to file this letter under seal. In deference to that request, we are filing preliminarily under seal in order to give the government the opportunity to support its request or propose redactions, which the government has indicated it will do by Friday, October 17. We are unaware of any basis for sealing, including pursuant to the protective order. *See* ECF No. 11. To the contrary, we believe that the matters discussed herein are precisely of the kind that undergird the public's First

---

[4] We understand that the Churchills will be travelling to the sentencing. The defense anticipates filing a motion as soon as next week which may require a further adjournment of the sentencing hearing. The defense will confer with the government on a suggested schedule for the Court's approval this week.

Hon. Colleen McMahon
October 14, 2025
Page 5

Amendment and common law right of access to court documents as "a measure of accountability and for the public to have confidence in the administration of justice." *United States v. Amodeo*, 71 F.3d 1044, 1048 (2d Cir. 1995).

                                                      Respectfully submitted,

                                                      */s/ Noam Biale*
                                                      Noam Biale
                                                      Katie Renzler
                                                      Michael Bass

                                                      *Attorneys for Rui-Siang Lin*

cc:       Counsel of Record (by email)