# EXHIBIT E



**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Jacob K. Javits Federal Building*
*26 Federal Plaza, 37th Floor*
*New York, New York 10278*

December 16, 2024

**BY EMAIL**
Noam Biale
Sher Tremonte
90 Broad Street, 23rd Floor
New York, New York 10004
NBiale@shertremonte.com

Re:    *United States v. Rui-Siang Lin*, 24 Cr. 178 (CM)

Dear Mr. Biale:

On the understandings specified below, the Office of the United States Attorney for the Southern District of New York ("this Office") will accept a guilty plea from Rui-Siang Lin, a/k/a "Ruisiang Lin," a/k/a "林睿庠," a/k/a "Pharoah," a/k/a "faro," ("the defendant") to Counts Two through Four of the above-referenced Indictment.

Count Two of the Indictment charges the defendant with conspiring to distribute and possess with intent to distribute (i) five kilograms and more of mixtures and substances containing a detectable amount of cocaine, in violation of Title 21, United States Code, Section 841(b)(1)(A); (ii) one kilogram and more of mixtures and substances containing a detectable amount of heroin, in violation of Title 21, United States Code, Section 841(b)(1)(A); (iii) 500 grams and more of mixtures and substances containing a detectable amount of methamphetamine, its salts, isomers, or salts of its isomers, in violation of Title 21, United States Code, Section 841(b)(1)(A); (iv) 10 grams and more of mixtures and substances containing a detectable amount of lysergic acid diethylamide (LSD), in violation of Title 21, United States Code, Section 841(b)(1)(A); (v) 100 kilograms or more of a mixture or substance containing a detectable amount of marihuana in violation of Title 21, United States Code, Section 841(b)(1)(B); (vi) mixtures and substances containing a detectable amount of Oxycodone, in violation of Title 21, United States Code, Section 841(b)(1)(C); (vii) mixtures and substances containing a detectable amount of ketamine, in violation of Title 21, United States Code, Section 841(b)(1)(C); (viii) mixtures and substances containing a detectable amount of Methylenedioxymethamphetamine ("MDMA"), in violation of Title 21, United States Code, Section 841(b)(1)(C); (ix) mixtures and substances containing a detectable amount of amphetamine, in violation of Title 21, United States Code, Section 841(b)(1)(C); and (x) mixtures and substances containing a detectable amount of fentanyl, in violation of Title 21, United States Code, Section 841(b)(1)(C). This offense carries a maximum sentence of life imprisonment; a mandatory minimum sentence of 10 years' imprisonment; a maximum term of supervised release of life; a mandatory minimum term of supervised release of five years; a maximum fine, pursuant to Title 21, United States Code, Section 841(b)(1)(A) and Title 18, United States Code, Section 3571, of the greatest of $10,000,000, twice the gross

pecuniary gain derived from the offense, or twice the gross pecuniary loss to persons other than the defendant resulting from the offense; and a $100 mandatory special assessment.

Count Three of the Indictment charges the defendant with money laundering in violation of Title 18, United States Code, Sections 1956(a)(1)(B)(i), and 2. This offense carries a maximum term of imprisonment of 20 years, a maximum term of supervised release of 3 years, a maximum fine, pursuant to Title 18, United States Code, Section 1956(a)(1)(B) of the greatest of $500,000, or twice the value of the property involved in the transaction, and a $100 mandatory special assessment.

Count Four of the Indictment charges the defendant with conspiracy to sell adulterated and misbranded medication, in violation of Title 18, United States Code, Section 371.. This offense carries a maximum term of imprisonment of five years; a maximum term of supervised release of three years; a maximum fine, pursuant to Title 18, United States Code, Section 3571, of the greatest of $250,000, twice the gross pecuniary gain derived from the offense, or twice the gross pecuniary loss to persons other than the defendant resulting from the offense; and a $100 mandatory special assessment.

The total maximum term of imprisonment on Counts Two through Four is life, with a mandatory minimum term of 10 years.

In consideration of the defendant's plea to the above offenses, the defendant will not be further prosecuted criminally by this Office (except for criminal tax violations, if any, as to which this Office cannot, and does not, make any agreement) for (i) conspiring to distribute and possess with intent to distribute cocaine, heroin, methamphetamine, LSD, marihuana, Oxycodone, ketamine, MDMA, amphetamine, and fentanyl, from at least in or about October 2020 up to and including at least in or about March 2024, as charged in Count Two of the Indictment; (ii) money laundering from at least in or about October 2020 up to and including at least in or about March 2024, as charged in Count Three of the Indictment; and (iii) conspiring to sell adulterated and misbranded medication, from at least in or about October 2020 up to and including at least in or about March 2024, as charged in Count Four of the Indictment, it being understood that this agreement does not bar the use of such conduct as a predicate act or as the basis for a sentencing enhancement in a subsequent prosecution including, but not limited to, a prosecution pursuant to 18 U.S.C. §§ 1961 *et seq.* In addition, at the time of sentencing, the Government will move to dismiss any open Count(s) against the defendant. The defendant agrees that with respect to any and all dismissed charges the defendant is not a "prevailing party" within the meaning of the "Hyde Amendment," Section 617, P.L. 105-119 (Nov. 26, 1997), and will not file any claim under that law.

The defendant hereby admits the forfeiture allegations with respect to Counts Two through Four of the Indictment and agrees to forfeit to the United States, pursuant to Title 21, United States Code, Section 853, Title 18, United States Code, Section 982(a)(1), Title 21, United States Code, Section 334 and Title 28, United States Code, Section 2461(c): (i) a sum of money equal to $ $105,045,109.67 in United States currency, representing (a) any and all property constituting, or derived from, any proceeds obtained, directly or indirectly, as a result of the offense charged in Count Two of the Indictment and any and all property used, or intended to be used, in any manner

Page 3

or part, to commit, or to facilitate the commission of said offense; (b) any and all property, real and personal, involved in the offense described in Count Three of the Indictment, or any property traceable to such property; (c) the value of any and all drugs that were adulterated or misbranded when introduced into or while in interstate commerce or while held for sale (whether or not the first sale) after shipment in interstate commerce, and (ii) all right, title and interest of the defendant in the following specific property:

1) Approximately .5 Monero maintained at Limestone Server Bearing IP Address 74.63.195.162 with Monero Wallet bearing file path ""/root/.bitmonero/wallets/incognito"";

2) Approximately 30.62887372 Monero maintained at Limestone Server Bearing IP Address 74.63.195.162 with Monero Wallet bearing file path "/root/.bitmonero/wallets/incognito";

3) Approximately 19.115533942311 Monero maintained at Limestone Server Bearing IP Address 74.63.195.162 with Monero Wallet bearing file path "/root/.bitmonero/wallets/incognito";

4) Approximately 0.00098164 Bitcoin maintained at Limestone Server Bearing IP Address 74.63.195.162 with Wallet Name "Antinalysis";

5) Approximately 0.029 Bitcoin maintained at Limestone Server Bearing IP Address 74.63.195.162 with Wallet Name "Antinalysis";

6) Approximately 0.04356501 Bitcoin maintained at Limestone Server Bearing IP Address 74.63.195.162 with Wallet Name "Incognito-2";

7) Approximately 0.03614066 Bitcoin maintained at Limestone Server Bearing IP Address 74.63.195.162 with Bitcoin Wallet Labeled as "Incognito-3";

8) Approximately 0.04393044 Bitcoin maintained at Limestone Server Bearing IP Address 74.63.195.162 with Bitcoin Wallet Labeled as "Incognito-3";

9) Approximately 253.7279529 Binance Coin seized from Nest Services Limited (d/b/a Binance) Account with User ID 37817359;

10) Approximately 19.32802653 Bitcoin seized from Nest Services Limited (d/b/a Binance) Account with User ID 37817359;

11) Approximately 100.0000096 Ethereum seized from Nest Services Limited (d/b/a Binance) Account with User ID 37817359;

12) Approximately 1062671.01 Tether seized from Nest Services Limited (d/b/a Binance) Account with User ID 37817359;

2024.07.11

Case 1:24-cr-00178-CM   Document 45-5   Filed 10/24/25   Page 5 of 15

Page 4

13) Approximately 0.99357824 Binance Coin seized from Nest Services Limited (d/b/a Binance) Account with User ID 281631139;

14) Approximately 0.02008986 Bitcoin seized from Nest Services Limited (d/b/a Binance) Account with User ID 281631139;

15) Approximately 0.148863 Ethereum seized from Nest Services Limited (d/b/a Binance) Account with User ID 281631139;

16) Approximately 7803.290432 Tether seized from Nest Services Limited (d/b/a Binance) Account with User ID 281631139;

17) Approximately 1.528 Solana seized from Nest Services Limited (d/b/a Binance) Account with User ID 281631139;

18) Approximately 87.91381874 Binance Coin seized from Nest Services Limited (d/b/a Binance) Account with User ID 832860427;

19) Approximately 57.6825 Ethereum seized from Nest Services Limited (d/b/a Binance) Account with User ID 832860427;

20) Approximately 530985.3395 Tether seized from Nest Services Limited (d/b/a Binance) Account with User ID 832860427;

21) Approximately 1926.519 Solana seized from Nest Services Limited (d/b/a Binance) Account with User ID 832860427;

22) Approximately 500,459.18 Tether seized from Payward, Incorporated (d/b/a Kraken) Account AA39 N84G HES7 WXWY;

23) Approximately $509,025.98 seized from Payward, Incorporated (d/b/a Kraken) Account AA39 N84G HES7 WXWY;

24) Approximately 0.9999859 Bitcoin Deposited at Fixed Float and associated with Transaction ID 9B1769C5A0E8FF4BF8897C98F34EFBE8B5D65EE12BE3983799AD1CB406C11807;

25) Approximately 0.13650221 Bitcoin Wallet Identified as "feefilter" with Seed Words Beginning with "enter," "crunch," etc. Maintained on Kingston drive bearing serial number 203775042949;

26) Approximately 0.21726726 Bitcoin Wallet Identified as "bisq" with Seed Words Beginning with "ranch," "oven," etc. Maintained on Kingston drive bearing serial number 203775042949;

27) Approximately 4.867379568382 Monero Wallet Identified as "exchange" with Seed Words Beginning with "huddle," "neither," etc. Maintained on Kingston drive bearing serial number 203775042949;

28) Approximately 131.834890201449 Monero Wallet Identified as "exchange" "account 4" with Seed Words Beginning with "huddle," "neither," etc. Maintained on Kingston drive bearing serial number 203775042949;

29) Approximately 0.02782216 Monero Wallet Identified as "filter" with Seed Words Beginning with "dosage," "exit," etc. Maintained on Kingston drive bearing serial number 203775042949;

30) Approximately 0.49987752 Monero Wallet Identified as "potluck" with Seed Words Beginning with "wield," "ticket," etc. Maintained on Kingston drive bearing serial number 203775042949;

31) Approximately 2.381063213 Ethereum (ETH) Maintained on Kingston Thumb Drive bearing serial number 203775042949 with seed words beginning with "camera," "into," etc.;

32) Approximately 108072.886701888 KarratCoin (KARRAT) Maintained on Kingston Thumb Drive bearing serial number 203775042949 with seed words beginning with "camera," "into," etc.;

33) Approximately 0.236214021997997 Ethereum (ETH) Maintained on Kingston Thumb Drive bearing serial number 203775042949 with seed words beginning with "camera," "into," etc.;

34) Approximately 6083.15111 Aave Ethereum USDC Maintained on Kingston Thumb Drive bearing serial number 203775042949 with seed words beginning with "camera," "into," etc.;

35) Approximately 4424.71176944327 Aave Ethereum DAI Maintained on Kingston Thumb Drive bearing serial number 203775042949 with seed words beginning with "camera," "into," etc.;

36) Approximately 3390.883559 Aave Ethereum USDt Maintained on Kingston Thumb Drive bearing serial number 203775042949 with seed words beginning with "camera," "into," etc.;

37) Approximately 344.446 Aave Ethereum LUSDt Maintained on Kingston Thumb Drive bearing serial number 203775042949 with seed words beginning with "camera," "into," etc.;

Page 6

38) Approximately 0.009831404132392 Ethereum (ETH) Maintained on Kingston Thumb Drive bearing serial number 203775042949 with seed words beginning with "camera," "into," etc.;

39) BoredApeKennelClub 7140 Non-Fungible Token Maintained on Kingston Thumb Drive bearing serial number 203775042949 with seed words beginning with "camera," "into," etc.;

40) My Pet Hooligan 569 Non-Fungible Token Maintained on Kingston Thumb Drive bearing serial number 203775042949 with seed words beginning with "camera," "into," etc.;

41) My Pet Hooligan 2330 Non-Fungible Token Maintained on Kingston Thumb Drive bearing serial number 203775042949 with seed words beginning with "camera," "into," etc.;

42) My Pet Hooligan 7895 Non-Fungible Token Maintained on Kingston Thumb Drive bearing serial number 203775042949 with seed words beginning with "camera," "into," etc.;

43) My Pet Hooligan 7875 Non-Fungible Token Maintained on Kingston Thumb Drive bearing serial number 203775042949 with seed words beginning with "camera," "into," etc.;

44) My Pet Hooligan 8112 Non-Fungible Token Maintained on Kingston Thumb Drive bearing serial number 203775042949 with seed words beginning with "camera," "into," etc.;

45) My Pet Hooligan 6528 Non-Fungible Token Maintained on Kingston Thumb Drive bearing serial number 203775042949 with seed words beginning with "camera," "into," etc.;

46) My Pet Hooligan 24 Non-Fungible Token Maintained on Kingston Thumb Drive bearing serial number 203775042949 with seed words beginning with "camera," "into," etc.;

47) My Pet Hooligan 7158 Non-Fungible Token Maintained on Kingston Thumb Drive bearing serial number 203775042949 with seed words beginning with "camera," "into," etc.;

48) My Pet Hooligan 5886 Non-Fungible Token Maintained on Kingston Thumb Drive bearing serial number 203775042949 with seed words beginning with "camera," "into," etc.;

49) My Pet Hooligan 6067 Non-Fungible Token Maintained on Kingston Thumb Drive bearing serial number 203775042949 with seed words beginning with "camera," "into," etc.;

Page 7

50) My Pet Hooligan 3904 Non-Fungible Token Maintained on Kingston Thumb Drive bearing serial number 203775042949 with seed words beginning with "camera," "into," etc.;

51) My Pet Hooligan 1585 Non-Fungible Token Maintained on Kingston Thumb Drive bearing serial number 203775042949 with seed words beginning with "camera," "into," etc.;

52) My Pet Hooligan 2963 Non-Fungible Token Maintained on Kingston Thumb Drive bearing serial number 203775042949 with seed words beginning with "camera," "into," etc.;

53) My Pet Hooligan 7474 Non-Fungible Token Maintained on Kingston Thumb Drive bearing serial number 203775042949 with seed words beginning with "camera," "into," etc.;

54) My Pet Hooligan 4824 Non-Fungible Token Maintained on Kingston Thumb Drive bearing serial number 203775042949 with seed words beginning with "camera," "into," etc.;

55) BoredApeYachtClub 3405 Non-Fungible Token Maintained on Kingston Thumb Drive bearing serial number 203775042949 with seed words beginning with "camera," "into," etc.;

(collectively the "Specific Property").

The defendant agrees that the defendant will not file a claim or a petition for remission or mitigation in any forfeiture proceeding involving the Specific Property and will not cause or assist anyone else in doing so. The defendant also agrees to take all necessary steps to pass clear title to the Specific Property to the United States, including, but not limited to, the execution of all necessary documentation. It is further understood that any forfeiture of the defendant's assets shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty the Court may impose upon the defendant in addition to forfeiture. The defendant consents to the entry of the Consent Order of Forfeiture annexed hereto as Exhibit A and agrees that the Consent Order of Forfeiture shall be final as to the defendant at the time it is ordered by the Court.

The defendant further agrees to make restitution in an amount ordered by the Court. The restitution amount shall be paid according to a plan established by the Court. The defendant will be given credit against this restitution amount for any payments made prior to sentencing, as verified by the Office.

In consideration of the foregoing and pursuant to United States Sentencing Guidelines ("U.S.S.G." or "Guidelines") Section 6B1.4, the parties hereby stipulate to the following:

Page 8

A. Offense Level

1. The November 1, 2024, edition of the Guidelines manual applies in this case.

2. Pursuant to U.S.S.G. § 3D1.2(d), Counts Two, Three, and Four are grouped (the "Group"), because the offense level is determined largely on the basis of the total amount of harm or loss, the quantity of a substance involved, or some other measure of aggregate harm, or the offense behavior was ongoing or continuous in nature and the offense guideline is written to cover such behavior.

Count Two

3. The applicable Guidelines section is U.S.S.G. § 2D1.1.

4. Pursuant to U.S.S.G. § 2D1.1(a)(5) and Application Note 8, because the offense involves different controlled substances, these quantities are converted to their converted drug weight and added together. The defendant conspired to distribute the following quantities of controlled substances, which convert to the following converted drug weights:

| Drug | Weight (g) | Weight (kg) | Converted Drug Weight (kg) |
|---|---|---|---|
| Cocaine | 1,047,900 | 1,047.9 | 209,580 |
| Heroin | 41,657.41 | 41.66 | 41,657.41 |
| Methamphetamine | 1,269,722 | 1,269.72 | 2,539,444 |
| LSD | 990.39 | 0.990 | 99,039 |
| Marihuana | 971,319 | 971.32 | 971.32 |
| Oxycodone | 4,233.61 | 4.23 | 28,365.17 |
| Ketamine | 767,004.70 | 767 | 767 |
| MDMA | 272,336.70 | 272.34 | 136,168.35 |
| Amphetamine | 214,411.40 | 214.41 | 428,822.80 |
| Fentanyl | 76 | 0.076 | 190 |
| Alprazolam | 1,046,006 | 1,046 | 9.99[1] |
| Phenycyclidine (PCP) | 31.44 | 0.03 | 31.44 |
| Methadone | 6.36 | 0.00636 | 3.18 |
| **TOTAL** | -- | -- | **3,485,049.66** |

5. Pursuant to U.S.S.G. § 2D1.1(c)(1), the base offense level for 3,485,0499.66 kilograms of converted drug weight is 38.

6. Pursuant to U.S.S.G. § 2D1.1(b)(7), two levels are added because the defendant, or a person for whose conduct the defendant is accountable, distributed a controlled substance through mass-marketing by means of an interactive computer service.

---

[1] Pursuant to U.S.S.G. § 2D1.1 cmt. note 8(D), the combined weight of all Schedule IV substances shall not exceed 9.99 kilograms of converted drug weight.

2024.07.11

7. Pursuant to U.S.S.G. § 2D1.1(b)(13), two levels are added because the defendant represented or marketed as a legitimately manufactured drug another mixture or substance containing fentanyl (N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide) or a fentanyl analogue, and acted with willful blindness or conscious avoidance of knowledge that such mixture or substance was not the legitimately manufactured drug.

8. Pursuant to U.S.S.G. § 2D1.1(b)(16)(C),(E), two levels are added because the defendant was directly involved in the importation of a controlled substance and/or the defendant committed the offense as part of a pattern of criminal conduct engaged in as a livelihood.

9. Accordingly, the total offense level under U.S.S.G. § 2D1.1 is 44.

Count Three

10. The applicable Guidelines section is U.S.S.G. § 2S1.1.

11. Pursuant to U.S.S.G. § 2S1.1(a), the base offense level is (1) the offense level for the underlying offense from which the laundered funds were derived, if the defendant committed the underlying offenses (the crime charged in Count Two) and the offense level for that offense can be determined; or (2) eight levels plus the number of offense levels from the table in § 2B1.1 corresponding to the value of the laundered funds.

    a. U.S.S.G. § 2S1.1(a)(1), pursuant to U.S.S.G. § 2D1.1, and as indicated above, the applicable offense level for Count Two is 44.

    b. Pursuant to U.S.S.G. § 2S1.1(b)(2)(B), two levels are added because the defendant was convicted under 18 U.S.C. § 1956.

    c. Pursuant to U.S.S.G. § 2S1.1(b)(2)(C), four levels are added because section (a)(2) applies and the defendant was in the business of laundering funds.

    d. Pursuant to U.S.S.G. § 2S1.1(b)(3), two levels are added because section (b)(2)(B) applies, and the offense involved sophisticated laundering.

12. Accordingly, the applicable offense level for Count Three is 52, pursuant to U.S.S.G. § 2S1.1(a)(1).

Count Four

13. The applicable Guidelines section is U.S.S.G. § 2D1.1.

14. Pursuant to U.S.S.G. § 2D1.1, and as calculated above for Count Two, the applicable offense level for Count Four is 44.

Offense Level Applicable to the Group

15. Pursuant to U.S.S.G. § 3D1.3(b), the offense level applicable to the Group is the offense level that produces the highest offense level. Accordingly, 52, the adjusted offense level for Count Three, is the offense level applicable to the Group.

16. Pursuant to U.S.S.G. § 3B1.1, because the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive, 4 levels are added.

17. Assuming the defendant clearly demonstrates acceptance of responsibility, to the satisfaction of the Government, through the defendant's allocution and subsequent conduct prior to the imposition of sentence, a two-level reduction will be warranted, pursuant to U.S.S.G. § 3E1.1(a). Furthermore, assuming the defendant has accepted responsibility as described in the previous sentence, the Government will move at sentencing for an additional one-level reduction, pursuant to U.S.S.G. § 3E1.1(b), because the defendant gave timely notice of the defendant's intention to enter a plea of guilty, thereby permitting the Government to avoid preparing for trial and permitting the Court to allocate its resources efficiently.

In accordance with the above, the applicable Guidelines offense level is 53.

B. Criminal History Category

Based upon this Office's current understanding (including from representations by the defense), the defendant has zero criminal history points.

In accordance with the above, the defendant's Criminal History Category is I.

C. Sentencing Range

Based upon the calculations set forth above, the defendant's stipulated Guidelines sentence is life imprisonment, with a mandatory minimum term of 120 months' imprisonment (the "Stipulated Guidelines Sentence"). In addition, after determining the defendant's ability to pay, the Court may impose a fine pursuant to U.S.S.G. § 5E1.2. At Guidelines level 53, the applicable fine range is $50,000 to $500,000.

As set forth above, the defendant was charged in Count Two with violating Title 21, United States Code, Sections 846, 841(b)(1)(A), which requires a statutory minimum term of imprisonment of 120 months. Accordingly, absent relief from the statutory minimum sentence, the defendant's sentence for Count Two would be at least 120 months. The parties agree that the defendant does not satisfy one or more conditions set forth in Title 18, United States Code, Section 3553(f) for safety valve relief from the statutory minimum sentence provision, which is a material basis for this Office's acceptance of a guilty plea that does not include Count One, which requires a statutory minimum of life imprisonment. It is therefore agreed that should the defendant seek safety valve relief at sentencing, such application by the defendant will constitute a material breach of this Agreement, and this Office will no longer be bound by any of the terms of this Agreement,

including the agreement to dismiss Count One and not to further prosecute the defendant as described above.

The parties agree that neither a downward nor an upward departure from the Stipulated Guidelines Sentence set forth above is warranted. Accordingly, neither party will seek any departure or adjustment pursuant to the Guidelines that is not set forth herein. Nor will either party in any way suggest that the Probation Office or the Court consider such a departure or adjustment under the Guidelines.

The parties agree that either party may seek a sentence outside of the Stipulated Guidelines Sentence based upon the factors to be considered in imposing a sentence pursuant to Title 18, United States Code, Section 3553(a).

Except as provided in any written Proffer Agreement(s) that may have been entered into between this Office and the defendant, nothing in this Agreement limits the right of the parties (i) to present to the Probation Office or the Court any facts relevant to sentencing; (ii) to make any arguments regarding where within the Stipulated Guidelines Sentence (or such other range as the Court may determine) the defendant should be sentenced and regarding the factors to be considered in imposing a sentence pursuant to Title 18, United States Code, Section 3553(a); (iii) to seek an appropriately adjusted Guidelines range if it is determined based upon information not contained in this Agreement that the defendant's criminal history category is different from that set forth above; and (iv) to seek an appropriately adjusted Guidelines range or mandatory minimum term of imprisonment if it is subsequently determined that the defendant qualifies as a career offender under U.S.S.G. § 4B1.1. Nothing in this Agreement limits the right of the Government to seek denial of the adjustment for acceptance of responsibility, *see* U.S.S.G. § 3E1.1, regardless of any stipulation set forth above, if the defendant fails clearly to demonstrate acceptance of responsibility, to the satisfaction of the Government, through the defendant's allocution and subsequent conduct prior to the imposition of sentence. Similarly, nothing in this Agreement limits the right of the Government to seek an enhancement for obstruction of justice, *see* U.S.S.G. § 3C1.1, regardless of any stipulation set forth above, should it be determined that the defendant has either (i) engaged in conduct, unknown to the Government at the time of the signing of this Agreement, that constitutes obstruction of justice or (ii) committed another crime after signing this Agreement.

It is understood that pursuant to U.S.S.G. § 6B1.4(d), neither the Probation Office nor the Court is bound by the above Guidelines stipulation, either as to questions of fact or as to the determination of the proper Guidelines to apply to the facts. In the event that the Probation Office or the Court contemplates any Guidelines adjustments, departures, or calculations different from those stipulated to above, or contemplates any sentence outside of the stipulated Guidelines Sentence, the parties reserve the right to answer any inquiries and to make all appropriate arguments concerning the same.

It is understood that the sentence to be imposed upon the defendant is determined solely by the Court. It is further understood that the Guidelines are not binding on the Court. The defendant acknowledges that the defendant's entry of a guilty plea to the charged offenses authorizes the sentencing court to impose any sentence, up to and including the statutory maximum

sentence. This Office cannot, and does not, make any promise or representation as to what sentence the defendant will receive. Moreover, it is understood that the defendant will have no right to withdraw the defendant's plea of guilty should the sentence imposed by the Court be outside the Guidelines range set forth above.

It is agreed that the defendant will not file a direct appeal or otherwise challenge, by petition pursuant to 28 U.S.C. § 2255 or any other provision, the defendant's conviction. In addition to any other claims the defendant might raise, the defendant waives the right to challenge the conviction based on (1) any non-jurisdictional defects in the proceedings before entry of this plea, (2) a claim that the statute(s) to which the defendant is pleading guilty is unconstitutional, and (3) a claim that the admitted conduct does not fall within the scope of the statute. It is further agreed that (i) the defendant will not file a direct appeal or otherwise challenge, by petition pursuant to 28 U.S.C. § 2255 or any other provision, any sentence within or below the Stipulated Guidelines Sentence of life imprisonment; and (ii) that the Government will not appeal any sentence within or above the Stipulated Guidelines Sentence. This provision is binding on the parties even if the Court employs a Guidelines analysis different from that stipulated to herein. Furthermore, it is agreed that any appeal as to the defendant's sentence that is not foreclosed by this provision will be limited to that portion of the sentencing calculation that is inconsistent with (or not addressed by) the above stipulation. The parties agree that this waiver applies regardless of whether the term of imprisonment is imposed to run consecutively to or concurrently with the undischarged portion of any other sentence of imprisonment that has been imposed on the defendant at the time of sentencing in this case. The defendant further agrees not to appeal or bring a collateral challenge of any term of supervised release that is less than or equal to the statutory maximum or any condition of supervised release imposed by the Court for which he had notice, including from a recommendation by the Probation Office in the presentence investigation report, and an opportunity to object. The defendant also agrees not to appeal or bring a collateral challenge of any fine that is less than or equal to $500,000, and the Government agrees not to appeal any fine that is greater than or equal to $50,000. The defendant also agrees not to appeal or bring a collateral challenge of any forfeiture of the Specific Property and any forfeiture amount that is less than or equal to $105,045,109.67, and the Government agrees not to appeal any forfeiture amount that is greater than or equal to $105,045,109.67. The defendant also agrees not to appeal or bring a collateral challenge to any special assessment that is less than or equal to $300. Notwithstanding the foregoing, nothing in this paragraph shall be construed to be a waiver of whatever rights the defendant may have to assert claims of ineffective assistance of counsel, whether on direct appeal, collateral review, or otherwise. Rather, it is expressly agreed that the defendant reserves those rights.

The defendant hereby acknowledges that the defendant has accepted this Agreement and decided to plead guilty because the defendant is in fact guilty.

By entering this plea of guilty, the defendant waives any and all right to withdraw the defendant's plea or to attack the defendant's conviction or sentence, either on direct appeal or collaterally, on the ground that the Government has failed to produce any discovery material (other than information establishing the factual innocence of the defendant), including *Jencks* Act material, material pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963), and impeachment material

pursuant to *Giglio v. United States*, 405 U.S. 150 (1972), that has not already been produced as of the date of the signing of this Agreement.

The defendant recognizes that, if the defendant is not a citizen of the United States, the defendant's guilty plea and conviction make it very likely that the defendant's removal from the United States is presumptively mandatory and that, at a minimum, the defendant is at risk of being removed or suffering other adverse immigration consequences. If the defendant is a naturalized citizen of the United States, the defendant recognizes that pleading guilty may have consequences with respect to the defendant's immigration status. Under federal law, an individual may be subject to denaturalization and removal if the defendant's naturalization was procured by concealment of a material fact or by willful misrepresentation, or otherwise illegally procured. The defendant acknowledges that the defendant has discussed the possible immigration consequences (including removal or denaturalization) of the defendant's guilty plea and conviction with defense counsel. The defendant affirms that the defendant wants to plead guilty regardless of any immigration or denaturalization consequences that may result from the guilty plea and conviction, even if those consequences include denaturalization and/or removal from the United States. The defendant understands that denaturalization and other immigration consequences are typically the subject of a separate proceeding, and the defendant understands that no one, including the defendant's attorney or the District Court, can predict with certainty the effect of the defendant's conviction on the defendant's immigration or naturalization status. It is agreed that the defendant will have no right to withdraw the defendant's guilty plea based on any actual or perceived adverse immigration consequences (including removal or denaturalization) resulting from the guilty plea and conviction. It is further agreed that the defendant will not challenge the defendant's conviction or sentence on direct appeal, or through litigation under Title 28, United States Code, Section 2255 and/or Section 2241, on the basis of any actual or perceived adverse immigration consequences (including removal or denaturalization) resulting from the defendant's guilty plea and conviction.

It is further agreed that should the conviction(s) following the defendant's plea(s) of guilty pursuant to this Agreement be vacated for any reason, then any prosecution that is not time-barred by the applicable statute of limitations on the date of the signing of this agreement (including any counts that the Government has agreed to dismiss at sentencing pursuant to this Agreement) may be commenced or reinstated against the defendant, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the commencement or reinstatement of such prosecution. It is the intent of this Agreement to waive all defenses based on the statute of limitations with respect to any prosecution that is not time-barred on the date that this Agreement is signed.

It is further understood that this Agreement does not bind any federal, state, or local prosecuting authority other than this Office.

[continued on the next page]

Page 14

  Apart from any written Proffer Agreement(s) that may have been entered into between this Office and defendant, this Agreement supersedes any prior understandings, promises, or conditions between this Office and the defendant. No additional understandings, promises, or conditions have been entered into other than those set forth in this Agreement, and none will be entered into unless in writing and signed by all parties.

              Very truly yours,

              EDWARD Y. KIM
              Acting United States Attorney

       By: *[signature: Ryan Finkel]*
              Ryan Finkel / Nicholas Chiuchiolo
              Assistant United States Attorneys
              (212) 637-6612 / 1247

              APPROVED:

              *[signature: D. McLeod]*
              Dina McLeod
              Co-Chief, Complex Frauds and
              Cybercrime Unit

AGREED AND CONSENTED TO:

_____    _____
Rui-Siang Lin              DATE

APPROVED:

_____    _____
Noam Biale               DATE
Attorney for Rui-Siang Lin

2024.07.11