**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

UNITED STATES OF AMERICA

v.

RUI-SIANG LIN,

       Defendant.

Case No. 24-cr-178 (CM)

# MEMORANDUM OF LAW IN SUPPORT OF RUI-SIANG LIN'S MOTION TO DISMISS THE INDICTMENT

SHER TREMONTE LLP
90 Broad St., 23rd Floor
New York, New York 10004
(212) 202-2600

*Attorneys for Rui-Siang Lin*

# **TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ...................................................................................................... ii

PRELIMINARY STATEMENT ................................................................................................. 1

FACTUAL BACKGROUND ...................................................................................................... 1

LEGAL STANDARD .................................................................................................................. 3

ARGUMENT ............................................................................................................................... 4

I.      MR. LIN IS IMMUNE FROM THE COURT'S CRIMINAL JURISDICTION ............... 4

        A.    Mr. Lin Is Immune from Prosecution under the Vienna Convention ..................... 6

        B.    Second Circuit Precedent Recognizes *In Transitu* Immunity ............................... 8

        C.    The Court Must Dismiss the Indictment ............................................................... 10

CONCLUSION ........................................................................................................................... 11

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Bergman v. DeSieyes*,
 71 F. Supp. 334 (S.D.N.Y. 1946) ............................................................................................. 8

*Bergman v. DeSieyes*,
 170 F.2d 360 (2d Cir. 1948) ............................................................................................ 7, 8, 9

*Bersoum v. Aboteat*,
 568 F. Supp. 3d 443 (S.D.N.Y. 2021) ................................................................................... 5, 6

*Brzak v. United Nations*,
 597 F.3d 107 (2d Cir. 2010) ..................................................................................................... 5

*Carbone v. Carbone*,
 123 Misc. 656 (N.Y. Sup. Ct. 1924) ......................................................................................... 9

*United States v. Al Sharaf*,
 183 F. Supp. 3d 45 (D.D.C. 2016) ................................................................................... 4, 5, 6

*United States v. Cotton*,
 535 U.S. 625 (2002) .................................................................................................................. 4

*United States v. Khobragade*,
 15 F. Supp. 3d 383 (S.D.N.Y. 2014) ............................................................................... 5, 6, 10

*United States v. Kostadinov*,
 734 F.2d 905 (2d Cir. 1984) ..................................................................................................... 5

*United States v. Kuznetsov*,
 442 F. Supp. 2d 102 (S.D.N.Y. 2006) ....................................................................................... 5

*United States v. Rosal*,
 191 F. Supp. 663 (S.D.N.Y. 1960) ................................................................................... 6, 9, 10

*United States v. Yousef*,
 750 F.3d 254 (2d Cir. 2014) ..................................................................................................... 4

**Statutes**

22 U.S.C. § 254d .......................................................................................................................... 4, 5

22 U.S.C. § 3303(c) ......................................................................................................................... 4

**Rules**

Fed. R. Crim. P. 12(b) .................................................................................................................. 3, 4

**Other Authorities**

Restatement (Second) of The Foreign Relations Law of the United States § 78 ........................ 8, 9

U.S. Dep't of State Off. of Foreign Missions, Diplomatic and
    Consular Immunity: Guidance for Law Enforcement and Judicial Authorities (2019) .............. 6

Vienna Convention on Diplomatic Relations, Apr. 18, 1961,
    23 U.S.T. 3227, T.I.A.S. No. 7502 .................................................................................. *passim*

**PRELIMINARY STATEMENT**

Rui-Siang Lin pleaded guilty and has accepted responsibility for his criminal conduct; however, this Court lacks jurisdiction over the prosecution of Mr. Lin. At the time of his arrest at John F. Kennedy International Airport on May 18, 2024, Mr. Lin was in transit from Saint Lucia, where he was serving as a member of the Technical Mission of the Republic of China (Taiwan) to Saint Lucia (hereinafter, the "Taiwanese Mission"), to his home country, Taiwan. As a member of the Taiwanese Mission, Mr. Lin qualified as a diplomat pursuant to the Vienna Convention on Diplomatic Relations (the "VCDR" or "Vienna Convention") and therefore enjoyed the benefits of diplomatic immunity. He did not lose that status upon leaving Saint Lucia. Rather, as the VCDR and binding Second Circuit law make plain, he remained cloaked in diplomatic immunity for at least the duration of his transit between his diplomatic post and Taiwan. That immunity precluded Mr. Lin's arrest and subsequent prosecution and deprives this Court of subject matter jurisdiction. Accordingly, the Court must dismiss the Indictment.

**FACTUAL BACKGROUND**

On March 26, 2024, the U.S. government charged Mr. Lin in a four-count indictment (the "Indictment") with (1) participating in a continuing criminal enterprise, (2) conspiracy to distribute narcotics, (3) money laundering, and (4) conspiracy to sell adulterated and misbranded medication, all arising from Mr. Lin's role in developing the code for and co-managing a darknet marketplace known as Incognito. ECF No. 5. At the time, Mr. Lin was living in Saint Lucia and was seven months into his service as an Assistant Technician at the Taiwanese Mission. *See* ECF No. 33 ("PSR") ¶¶ 94, 102. Taiwan mandates government service for all male citizens born after a certain date, and Mr. Lin was completing his required service through his post at the Taiwanese Mission. *See id.* ¶ 94. While in Saint Lucia, Mr. Lin applied to business school programs in the United

1

States and Singapore, and in early 2024, he learned that he had been accepted to the business school at the National University of Singapore. *See id.* ¶ 100.

After learning of his acceptance to business school, Mr. Lin planned a trip to visit the National University of Singapore. To get from Saint Lucia to Singapore, Mr. Lin's itinerary included a stop in New York and back home in Taiwan. *See* Declaration of Noam Biale ("Biale Decl."), Exs. A–B. On May 18, 2024, Mr. Lin left Saint Lucia on a 4:30 PM flight headed for John F. Kennedy Airport ("JFK") in New York scheduled to land at 9:31 PM that same day. *See* Biale Decl., Ex. A. He had a connecting flight leaving JFK four hours later, at 1:25 AM on May 19, 2024, and was scheduled to arrive at Taiwan Taoyuan International Airport at 5:15 AM on May 20, 2024. *See* Biale Decl., Ex. B. From there, Mr. Lin was scheduled to take one more flight from Taiwan to Singapore. *See id.* He also had a return flight to Saint Lucia scheduled to arrive on Sunday, May 26, 2024. *See* Biale Decl., Ex. C.

During his layover in JFK on May 18, 2024, Mr. Lin was arrested, searched, and interviewed by U.S. law enforcement. *See* PSR ¶ 61. Incident to Mr. Lin's arrest, law enforcement seized his passport, labeled "Official Taiwanese Passport," which indicates on the second page, under the heading "Official Status of Bearer," that Mr. Lin was an "Assistant Technician, Technical Mission of the Republic of China (Taiwan) to Saint Lucia."



*See* Biale Decl., Ex. D.

The following day, May 19, 2024, the FBI transferred Mr. Lin to the Metropolitan Detention Center in Brooklyn, New York, where he has remained since. PSR ¶ 11. On December 16, 2024, pursuant to a plea agreement with the government, Mr. Lin pleaded guilty to counts two through four of the Indictment. *See* Biale Decl., Ex. E.

Concurrent to the U.S. prosecution, the Taiwanese Ministry of Justice has been investigating Mr. Lin for the same conduct underlying this action. Biale Decl. ¶ 6. Taiwanese prosecutors seized certain of Mr. Lin's assets and there is a warrant out for his arrest. *Id.* Taiwanese prosecutors have indicated to the undersigned counsel that, should Mr. Lin appear in Taiwan, he will likely face prosecution. *Id.*

## LEGAL STANDARD

Federal Rule of Criminal Procedure 12(b)(1) provides that a "party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits." Fed. R. Crim. P. 12(b). Pursuant to Rule 12(b)(2), a "motion that the court lacks jurisdiction may

3

be made at any time while the case is pending." *Id.* "It is well settled that a defendant's plea of guilty admits all of the elements of a formal criminal charge and, in the absence of a court-approved reservation of issues for appeal, waives all challenges to the prosecution *except* those going to the court's jurisdiction." *United States v. Yousef*, 750 F.3d 254, 258 (2d Cir. 2014) (emphasis added). "[B]ecause it involves a court's power to hear a case," a challenge to subject matter jurisdiction "can never be forfeited or waived." *United States v. Cotton*, 535 U.S. 625, 630 (2002).[1]

## ARGUMENT

**I.     MR. LIN IS IMMUNE FROM THE COURT'S CRIMINAL JURISDICTION**

Because Mr. Lin had diplomatic immunity at the time of his arrest, the Court lacks subject matter jurisdiction and must dismiss the Indictment. Federal subject matter jurisdiction is limited "by the Diplomatic Relations Act of 1978 [(the 'DRA')]," *United States v. Al Sharaf*, 183 F. Supp. 3d 45, 49 (D.D.C. 2016), which provides, in relevant part, that "[a]ny action or proceeding brought against an individual who is entitled to immunity with respect to such action or proceeding under the Vienna Convention on Diplomatic Relations . . . or under any other laws extending diplomatic privileges and immunities, shall be dismissed." 22 U.S.C. § 254d. The provisions of the DRA, and thus the VCDR and all other laws extending diplomatic privileges and immunities, are applied to Taiwanese nationals through the Taiwan Relations Act. *See* 22 U.S.C. § 3303(c) ("For all purposes, including actions in any court in the United States, the Congress approves the

---

[1]     Mr. Lin's plea agreement likewise permits him to challenge this Court's subject matter jurisdiction. Under the terms of the agreement, Mr. Lin agreed not to "challenge the conviction based on (1) any *non-jurisdictional* defects before the entry of this plea, (2) a claim that the statute(s) to which the defendant is pleading guilty is unconstitutional, and (3) a claim that the admitted conduct does not fall within the scope of the statute." Biale Decl., Ex. E at 12 (emphasis added).

4

continuation in force of all treaties and other international agreements, including multilateral conventions, entered into by the United States and the governing authorities on Taiwan . . . .").

As the Second Circuit has explained, the DRA "makes pellucid that American courts must dismiss a suit against anyone who is entitled to immunity under either the VCDR or other laws extending diplomatic privileges and immunities." *Brzak v. United Nations*, 597 F.3d 107, 113 (2d Cir. 2010); *see also Bersoum v. Aboteat*, 568 F. Supp. 3d 443, 455 (S.D.N.Y. 2021) ("Per 22 U.S.C. § 254d, 'any action or proceeding brought against an individual who is entitled to immunity with respect to such action or proceeding under the Vienna Convention on Diplomatic Relations . . . *shall be dismissed*.'") (McMahon, J.). In a criminal case, "[a] court must consider a defendant's diplomatic status at the time of his arrest when determining the issue of diplomatic immunity." *United States v. Kuznetsov*, 442 F. Supp. 2d 102, 105 (S.D.N.Y. 2006). If the court finds that the defendant was "protected by the [Vienna] Convention" at the time of his arrest, therefore, it must dismiss the indictment. *United States v. Kostadinov*, 734 F.2d 905, 907 (2d Cir. 1984) ("Section 254d provides that an indictment against an individual protected by the Convention shall be dismissed.").

The law is clear that an individual may assert immunity on his own behalf. *See, e.g.*, *United States v. Khobragade*, 15 F. Supp. 3d 383, 383 (S.D.N.Y. 2014) (granting motion to dismiss criminal indictment based on defendant's assertion of diplomatic immunity); *Al Sharaf*, 183 F. Supp. 3d at 51–52 ("Accordingly, the defendant is entitled to assert diplomatic immunity notwithstanding that the sending State has not bolstered this assertion with any express statement of support."); *accord* 22 U.S.C. § 254d ("[I]mmunity may be established upon motion or suggestion by or on behalf of the individual."). Finally, courts recognize that the "principle of

5

diplomatic immunity has been given 'a broad and liberal interpretation' by the United States." *United States v. Rosal*, 191 F. Supp. 663, 664 (S.D.N.Y. 1960) (citation omitted).

At the time of his arrest, Mr. Lin was immune from criminal prosecution under both the VCDR and binding Second Circuit precedent. Because "the Government may not proceed on an Indictment obtained when [Mr. Lin] was immune from the jurisdiction of the Court," his case must be dismissed. *Khobragade*, 15 F. Supp. 3d at 388.

### A. Mr. Lin Is Immune from Prosecution under the Vienna Convention

The VCDR provides immunity from criminal jurisdiction to members of a diplomatic mission like Mr. Lin. *See* U.S. Dep't of State Off. of Foreign Missions, Diplomatic and Consular Immunity: Guidance for Law Enforcement and Judicial Authorities (2019), https://tinyurl.com/5d55jbm6 (the "State Dep't Guidance") at 7–9.[2] "Diplomatic agents 'may not be arrested, detained, prosecuted or sued unless their immunity is waived by the sending state.'" *Bersoum*, 568 F. Supp. 3d at 454 (quoting *Khobragade*, 15 F. Supp. 3d at 385).

Pursuant to Article 40 of the VCDR:

> If a diplomatic agent passes through or is in the territory of a third State, which has granted him a passport visa if such visa was necessary, while proceeding to take up or to return to his post, or when returning to his own country, the third State shall accord him inviolability and such other immunities as may be required to ensure his transit or return.

VCDR art. 40, ¶ 1. Paragraph two provides that in "circumstances similar to those specified in paragraph 1 of this article, third States shall not hinder the passage of members of the administrative and technical or service staff of a mission." *Id.* ¶ 2. In other words, a member of the technical staff of a diplomatic mission cannot be arrested by law enforcement in a state through

---

[2] In considering issues of diplomatic immunity, courts regularly rely on the State Department Guidance. *See, e.g., Khobragade*, 15 F. Supp. 3d at 385 n.14; *Al Sharaf*, 183 F. Supp. 3d at 51.

6

which they pass as a part of the journey home from their diplomatic post. This immunity is also known as *in transitu* immunity. *See, e.g.*, *Bergman v. DeSieyes*, 170 F.2d 360 (2d Cir. 1948). Based on the plain language of the VCDR, Mr. Lin had *in transitu* immunity at the time of his arrest in the United States.

To establish *in transitu* immunity, Article 40 requires Mr. Lin to prove that he was (1) a diplomatic agent or member of the technical staff of a mission, (2) traveling between his home country and his diplomatic post abroad, and (3) passing through the third country as a part of that trip. VCDR art. 40, ¶¶ 1–2. The evidence here readily demonstrates each element.

First, at the time of his arrest, Mr. Lin was serving on the technical staff of the Taiwanese Mission in Saint Lucia. *See* Biale Decl., Ex. D; PSR ¶ 102. Article 1 of the VCDR defines members of a mission's technical staff as "the members of the staff of the mission employed in the . . . technical service of the mission." VCDR art. 1, ¶ (f). As indicated on Mr. Lin's Official Taiwanese Passport, he held the title of "Assistant Technician, Technical Mission of the Republic of China (Taiwan) to Saint Lucia." Biale Decl., Ex. D. In that capacity, Mr. Lin helped program an online e-commerce platform for Saint Lucian youths and entrepreneurs and provided trainings to the Saint Lucia Police Force on investigating and analyzing cryptocurrency transactions. *See* PSR ¶ 102. Because Mr. Lin "perform[ed] tasks critical to the inner workings of the" Taiwanese Mission, he qualifies a member of the administrative and technical staff. State Dep't Guidance at 8.

Second, Mr. Lin was arrested during a layover in the United States while traveling roundtrip from his diplomatic post in Saint Lucia to Taiwan *en route* to Singapore, and then back to his post in Saint Lucia. Mr. Lin's flight itinerary confirms that he departed from Saint Lucia on May 18, 2024 at 4:30 PM on a flight set to arrive at JFK at 9:31 PM. *See* Biale Decl., Ex. A. He

was then scheduled to board a connecting flight to Taiwan Taoyuan International Airport four hours later but was arrested at JFK.  *See* Biale Decl., Ex. B; PSR ¶ 61.  Mr. Lin was scheduled to return to his diplomatic post in Saint Lucia on Sunday, May 26, 2024.  Biale Decl., Ex. C.  Thus, Mr. Lin was arrested in a third nation while traveling on active duty to/from his diplomatic post.

Third, that Mr. Lin entered the United States only for the purpose of transferring flights demonstrates that he was merely passing through the United States and thus satisfies the final element of *in transitu* immunity.

Because Mr. Lin was a member of the technical staff of the Taiwanese Mission, he had *in transitu* immunity under the VCDR during his trip from Saint Lucia to Taiwan.  Moreover, the Taiwanese Government has not indicated that it waived (or intends to waive) Mr. Lin's immunity in response to repeated inquiries from counsel for Mr. Lin.  *See* Biale Decl. ¶ 3.  Nor has the government produced anything to the undersigned counsel indicating that Taiwan had waived (or intends to waive) Mr. Lin's immunity.  *See* Biale Decl. ¶ 4.  Accordingly, Mr. Lin was immune from arrest during his layover at JFK.

## B.  Second Circuit Precedent Recognizes *In Transitu* Immunity

Even prior to the ratification of the VCDR, the Second Circuit and district courts therein long recognized the right to *in transitu* immunity for foreign diplomats passing through the United States on the way to or from their duty posts.  *See* Restatement (Second) of The Foreign Relations Law of the United States § 78 (1965).

In *Bergman v. DeSieyes*, a French diplomat claimed immunity from civil suit after having been served in New York while in transit to his post in Bolivia.  71 F. Supp. 334, 334 (S.D.N.Y. 1946).  The district court held that "a foreign minister en route, either to or from his post in another country, is entitled to innocent passage through a third country."  *Id.* at 341.  The Second Circuit

8

affirmed, in an opinion by Judge Learned Hand, holding "we are disposed to believe that the courts of New York would today hold that a diplomat *in transitu* would be entitled to the same immunity as a diplomat *in situ*." *Bergman v. DeSieyes*, 170 F.2d 360, 363 (2d Cir. 1948). Although the Circuit framed the decision as applying international law consistent with New York state law, *Bergman* remains authoritative precedent in the federal context. The court's reasoning is based almost entirely on a report of international law from the "Sixth International Conference of American States at Havana in 1928" and not on any principle of New York law.[3] *See id.* at 362–63; *see also id.* at 362 (describing the "consensus of opinion" from that conference as "weighty authority"). Indeed, *Bergman* has been cited in the Restatement (Second) of the Foreign Relations Law of the United States as correctly articulating the principle of *in transitu* immunity in foreign relations law. *See* Restatement (Second) of the Foreign Relations Law of the United States § 78 (1965).

Following *Bergman*, courts have recognized the protections granted by *in transitu* immunity. For example, in *United States v. Rosal*, 191 F. Supp. 663 (S.D.N.Y. 1960), the defendant, a Guatemalan diplomatic agent posted in Belgium and the Netherlands, was indicted on two counts of violating of U.S. narcotics law. *See id.* at 664. He moved to dismiss the indictment on the ground that he "was in transit from [Belgium and the Netherlands] through the United States to his homeland, and was consequently immune from arrest and prosecution." *Id.* Although the court found that Rosal had not actually been *en route* to Guatemala at the time of his arrest because he was staying in New York indefinitely, it recognized that "under the common law of nations, diplomats-in-transit (although not accredited to the United States) are entitled to

---

[3] New York courts also recognize *in transitu* diplomatic immunity. *See Carbone v. Carbone*, 123 Misc. 656 (N.Y. Sup. Ct. 1924) (vacating order of arrest and divorce summons for diplomatic attaché traveling through New York from his home country of Panama to his post in Italy).

9

immunity when they are in the United States en route between their diplomatic posts and their respective home countries." *Id.*

Accordingly, as with the VCDR, the Second Circuit's binding precedent recognizing *in transitu* immunity shields Mr. Lin from prosecution.

### C. The Court Must Dismiss the Indictment

Mr. Lin was shrouded in diplomatic immunity at the time of his arrest, rendering his subsequent prosecution unlawful. *See* State Dep't Guidance at 8 (members of an embassy's technical staff "enjoy privileges and immunities identical to those of diplomatic agents in respect of personal inviolability, immunity from criminal jurisdiction"). Accordingly, the Court lacks jurisdiction and must dismiss the Indictment. In *Khobragade*, Judge Scheindlin dismissed a criminal indictment against a member of the Permanent Mission of India, finding the defendant's diplomatic immunity to be a "jurisdictional bar." 15 F. Supp. 3d at 388. Although Khobragade's immunity was based on a different article of the VCDR than Mr. Lin's, the same reasoning applies here—"the Government may not proceed on an Indictment obtained when [the defendant] was immune from the jurisdiction of the Court." *Id.* "Because the Court lacked jurisdiction over" Mr. Lin at the time of his arrest, his "motion must be granted." *Id.* at 386.[4]

---

[4] As noted above, the Taiwanese Ministry of Justice is currently investigating Mr. Lin for the same conduct underlying this action and has indicated it intends to prosecute him should he return to Taiwan. Biale Decl. ¶ 6. Accordingly, if the Court dismisses this action, as it must, Mr. Lin will face criminal liability in Taiwan.

## **CONCLUSION**

The Indictment should be dismissed.

Dated: October 24, 2025
      New York, New York

                                            Respectfully submitted,

                                            SHER TREMONTE LLP

By:    */s/ Noam Biale*
        Noam Biale
        Katie Renzler
        Michael Bass
        90 Broad Street, 23rd Floor
        New York, NY 10004
        (212) 202-2600
        nbiale@shertremonte.com
        krenzler@shertremonte.com
        mbass@shertremonte.com

        *Attorneys for Rui-Siang Lin*