UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

v.

RUI-SIANG LIN,

        Defendant.

Case No. 24-cr-178 (CM)

# REPLY MEMORANDUM OF LAW IN SUPPORT OF RUI-SIANG LIN'S MOTION TO DISMISS THE INDICTMENT

SHER TREMONTE LLP
90 Broad St., 23rd Floor
New York, New York 10004
(212) 202-2600

*Attorneys for Rui-Siang Lin*

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ..................................................................................................ii

PRELIMINARY STATEMENT ............................................................................................1

ARGUMENT ..........................................................................................................................1

I. Taiwan's Opinion Regarding Mr. Lin's Diplomatic Immunity Is Not Dispositive .........1

II. Mr. Lin Has Diplomatic Immunity .................................................................................3

III. The Doctrine of *In Transitu* Immunity Applies Here .....................................................5

IV. Taiwan Has Not Waived Mr. Lin's Immunity .................................................................7

CONCLUSION .......................................................................................................................7

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Abbott v. Abott,*
   560 U.S. 1 (2010)..................................................................................................................5

*Ali v. Dist. Dir., Miami Dist., U.S. Citizenship & Immigr. Servs.,*
   743 F. App'x 354 (11th Cir. 2018) ........................................................................................2

*Animal Science Products, Inc. v. Hebei Welcome Pharmaceutical Co. Ltd.,*
   585 U.S. 33 (2018)................................................................................................................3

*Broidy Capital Mgmt. LLC v. Benomar,*
   944 F.3d 436 (2d Cir. 2019) ............................................................................................1, 5

*E. Airlines, Inc. v. Floyd,*
   499 U.S. 530 (1991)..............................................................................................................5

*United States v. Al Sharaf,*
   183 F. Supp. 3d 45 (D.D.C. 2016) .......................................................................................2

*United States v. Kuznetsov,*
   442 F. Supp. 2d 102 (S.D.N.Y. 2006) .................................................................................2

*United States v. Lumumba,*
   741 F.2d 12 (2d Cir. 1984) ..................................................................................................2

**Other Authorities**

Merriam-Webster, https://www.merriam-webster.com/dictionary/return
   (last visited December 2, 2025) ..........................................................................................5

*Taiwan Youth Overseas Service*, TaiwanICDF,
   https://tinyurl.com/4zwn6n7k (last visited December 1, 2025)..........................................4

U.S. Dep't of State Off. of Foreign Missions, Diplomatic and
   Consular Immunity: Guidance for Law Enforcement and Judicial Authorities (2019) .............7

Vienna Convention on Diplomatic Relations, Apr. 18, 1961,
   23 U.S.T. 3227, T.I.A.S. No. 7502 ...........................................................................*passim*

**PRELIMINARY STATEMENT**

Mr. Lin submits this reply memorandum of law in response to the government's Letter Response in Opposition to Defendant's Motion to Dismiss (ECF No. 49) (the "Opposition" or "Opp.") and in further support of Mr. Lin's motion to dismiss the Indictment (ECF Nos. 44–46) (the "Motion to Dismiss"). As explained in the Motion to Dismiss and below, this Court lacks jurisdiction over Mr. Lin's prosecution because, at the time of Mr. Lin's arrest, he had diplomatic immunity.[1] Therefore, the Court must dismiss the Indictment.

**ARGUMENT**

**I.    Taiwan's Opinion Regarding Mr. Lin's Diplomatic Immunity Is Not Dispositive**

The government's opposition hinges on its assertion that Taiwan's statement that Mr. Lin does not, and did not, have diplomatic immunity is binding on this Court. The government is wrong.

"Diplomatic immunity in the United States is governed by the Vienna Convention on Diplomatic Relations, which was ratified by the United States in 1972" and incorporated into U.S. law through the DRA. *Broidy Capital Mgmt. LLC v. Benomar*, 944 F.3d 436, 441-43 (2d Cir. 2019). Thus, the question of whether or not an individual has diplomatic immunity is a question of *U.S. law* for a *U.S. court* to decide. *See id.* at 442. Nothing in the VCDR or the case law interpreting the VCDR supports the government's argument that a sending state's view of an individual's diplomatic status is dispositive of whether that individual has immunity. In fact, the cases that the government cites (Opp. at 2-3) contradict its argument. Those cases make plain that the *receiving* state's assessment of an individual's diplomatic status is relevant for purposes of

---

[1]    Capitalized terms used in this brief have the same meaning as those in the Memorandum of Law in Support of Rui-Siang Lin's Motion to Dismiss the Indictment ("Opening Brief" or "Br."), ECF No. 46.

1

diplomatic immunity under the VCDR.[2] *See United States v. Lumumba*, 741 F.2d 12, 15 (2d Cir. 1984) (explaining that the VCDR "premise[s] diplomatic immunity upon recognition by the receiving state"); *see also Ali v. Dist. Dir., Miami Dist., U.S. Citizenship & Immigr. Servs.*, 743 F. App'x 354, 358 (11th Cir. 2018) (same). Notably, the government has not submitted anything reflecting the view of Saint Lucia, the receiving state here, as to Mr. Lin's diplomatic status.

Further undermining the government's argument that Taiwan's view is dispositive, courts have ruled on the question of diplomatic immunity contrary to or in the absence of a sending state's assessment of an individual's diplomatic immunity. For example, in *United States v. Kuznetsov*, the Russian Mission "stated in [] letters to the Court that Defendant is a 'Russian career diplomatic agent' and hence, entitled to full diplomatic immunity." 442 F. Supp. 2d 102, 107 (S.D.N.Y. 2006). Despite the sending state's assertion of diplomatic immunity, the court nevertheless held that the defendant did not have diplomatic immunity based on its own review of the VCDR and related case law. *Id.* at 108. And in *United States v. Al Sharaf*, the court determined that, under the VCDR, "the defendant is entitled to assert diplomatic immunity notwithstanding that the sending State has not bolstered this assertion with any express statement of support" and ultimately held that the defendant did not have diplomatic immunity. 183 F. Supp. 3d 45, 52, 58 (D.D.C. 2016).

Finally, even if Mr. Lin's diplomatic immunity were a question of Taiwanese law (which it is not), Taiwan's opinion of his diplomatic status would not be persuasive, let alone dispositive.

---

[2] The government also cites as authoritative Eileen Denza's commentary stating that "diplomatic immunity belongs not to the individual but to the sending State." *See* Opp. at 3 (quoting Eileen Denza, *Diplomatic Law: Commentary on the Vienna Convention on Diplomatic Relations* (4th ed. 2016)). But Denza's statement relates to *waiver*—not whether immunity attaches. *Id.* There is no dispute that Taiwan could waive Mr. Lin's immunity, but as discussed below, it has not done so. Insofar as the government is suggesting that Mr. Lin lacks standing to assert a diplomatic immunity defense, that argument is meritless. *See* Br. at 5.

2

A federal court "is not bound to accord conclusive effect to [a] foreign government's statement[]" characterizing its own law. *Animal Science Products, Inc. v. Hebei Welcome Pharmaceutical Co. Ltd.*, 585 U.S. 33, 36 (2018). Instead, when determining what weight to give such a statement, a court should consider various factors, including the statement's "clarity, thoroughness, and support; its context and purpose;" whether the statement was offered "in the context of litigation;" and the statement's consistency with the foreign government's past positions . . . ." *Id.* at 43. Applying those factors here, Taiwan's statement should be accorded little deference. Via letter, the Taiwan Ministry of Foreign Affairs asserts that Mr. Lin did not "hold[] any position under Article One of the Vienna Convention on Diplomatic Relations" and, therefore, "did not and does not enjoy diplomatic privileges and immunities" under the VCDR. Opp. Ex. 1. This letter lacks any legal support, was generated in response to this litigation, and, as discussed below, contradicts Taiwan's prior statements that Mr. Lin's substitute military service was diplomatic in nature.

For these reasons, Taiwan's opinion with respect to Mr. Lin's diplomatic immunity is not dispositive, or even persuasive.

**II.     Mr. Lin Has Diplomatic Immunity**

As set forth in the Opening Brief, as a Technical Assistant to the Technical Mission, Mr. Lin falls within the purview of the VCDR. *See* Br. at 7. Article 1 of the VCDR defines members of a mission's technical staff as "the members of the staff of the mission employed in the . . . technical service of the mission." VCDR art. 1, ¶ (f). As stated on Mr. Lin's Official Taiwanese Passport, he held the title of "Assistant Technician, Technical Mission of the Republic of China (Taiwan) to Saint Lucia." Br. at 3. The government argues that, notwithstanding Mr. Lin's title and the substance of his work, the VCDR does not apply to him because the Technical Mission is not a diplomatic mission. Opp. at 3-4. Specifically, the government argues that the Technical Mission is not a diplomatic mission because it "is affiliated with the Taiwan

3

International Cooperation and Development Fund" (the "ICDF") and because Mr. Lin "has not shown that the Technical Mission was part of the [Taiwanese] embassy." *Id.* For this, the government cited ICDF's website, which states that the Technical Mission is affiliated with ICDF.

But the government ignores parts of the website it relies on that directly contradict its position. ICDF's website states that Taiwan's substitute military service is integral to Taiwan's diplomatic operations. *See Taiwan Youth Overseas Service*, TaiwanICDF, https://tinyurl.com/4zwn6n7k (last visited December 1, 2025). The website explains that Taiwan's compulsory military service was "expanded" in August 2000 "to cover diplomatic, overseas alternatives to military service, resulting in the formation of a new corps of 'peace volunteers' to work with personnel at Taiwan's overseas technical and medical missions." *Id.* "The creation of this Overseas Substitute Service was a milestone in Taiwan's diplomatic history and augmented the TaiwanICDF's efforts to advance international development." *Id.*

Further, outside of the context of this litigation, the Taiwanese government has recognized that Mr. Lin's substitute service in particular was diplomatic in nature. Following Mr. Lin's arrest,

███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████

Mr. Lin's work for the Technical Mission was also part of the Taiwanese embassy's diplomatic outreach to Saint Lucia. As part of Mr. Lin's substitute service, he provided a training to the Saint Lucia Police Force on investigating and analyzing cryptocurrency transactions. *See*

4

PSR ¶ 102. At the time of the training, the Taiwanese Embassy in Saint Lucia publicly reported that the embassy itself "sponsored" the training program, which Mr. Lin taught "us[ing] his professional background and qualifications in the field." Biale Decl., Ex. B. Consistent with the "functions of a diplomatic mission" as set forth in the VCDR, this type of training "[p]romot[es] friendly relations between the sending State and the receiving State." VCDR art. 3 ¶ (e).

For these reasons, Mr. Lin's substitute service with the Technical Mission is covered by, and afforded him diplomatic immunity under, the VCDR.[3]

### III. The Doctrine of *In Transitu* Immunity Applies Here

The government argues in the alternative that *in transitu* immunity does not apply to Mr. Lin because Taiwan was not his final destination. Opp. at 4. That is wrong. Because Mr. Lin was travelling between his post in Saint Lucia and his "own country," Taiwan, Mr. Lin was immune from arrest at JFK on May 18, 2024 and from his subsequent prosecution.

Article 40 of the VCDR provides that a diplomatic agent has diplomatic immunity when "proceeding to take up or return to his post, or when returning to his own country." VCDR art. 40 ¶ 1; *see also id.* art. 40 ¶ 2. "The interpretation of a treaty, like the interpretation of a statute, begins with its text." *Abbott v. Abott*, 560 U.S. 1, 10 (2010) (citation omitted). Only where the text is "difficult or ambiguous" does a court "look beyond the written words to the history of the treaty, the negotiations, and the practical construction adopted by the parties." *Broidy Capital Mgmt. LLC*, 944 F.3d at 442 (quoting *E. Airlines, Inc. v. Floyd*, 499 U.S. 530, 535 (1991)). There is nothing "difficult or ambiguous" about the word "return." Its plain meaning is "to go back." *See Return*, Merriam-Webster, https://www.merriam-webster.com/dictionary/return (last visited

---

[3] To the extent the Court determines that it cannot conclude on this record whether Mr. Lin had diplomatic immunity at the time of his arrest, Mr. Lin respectfully requests that the Court hold an evidentiary hearing to resolve any factual questions.

December 2, 2025). Mr. Lin was going back to Taiwan. He was scheduled to board a plane at JFK that was destined for Taiwan, where he would deplane and stay for at least the duration of his layover. *See* Br. at 2. There is nothing in the VCDR that suggests that where an individual goes after he returns to his home country has any bearing on *in transitu* immunity. Thus, under the plain language of the treaty, Mr. Lin was returning to Taiwan and thus protected by diplomatic immunity while traveling through JFK.

In addition to lacking legal support, the government's position also lacks any limiting principle. Under the government's interpretation of Article 40, how much time would Mr. Lin have to spend in Taiwan for *in transitu* immunity to apply? It argues that a four-hour layover does not qualify as "returning," but would a 24-hour layover suffice? Would it make a difference if, rather than buying one ticket from Saint Lucia to Singapore with layovers in New York and Taiwan he had purchased one ticket from Saint Lucia to Taiwan and a separate ticket from Taiwan to Singapore? The government provides no answer to such questions because the VCDR has no answer. Instead, it has a clear rule: if the individual is returning to his home country, he is entitled to *in transitu* immunity.

The Court should reject the government's extratextual and unsupported position that, for Article 40 to apply, Taiwan had to have been Mr. Lin's final destination.[4] Because Mr. Lin had *in transitu* immunity at the time of his arrest, the Court should dismiss the Indictment.

---

[4] In a footnote, the government argues that the VCDR does not extend *in transitu* diplomatic immunity to technical staff members like Mr. Lin. *See* Opp. at 4 n.4. The plain language of the treaty says otherwise. Article 40(2) provides that "third States shall not hinder the passage of members of the administrative and technical or service staff of a mission . . . through their territories." VCDR art. 40 ¶ 2. By arresting and detaining Mr. Lin, the U.S. government indisputably "hinder[ed]" Mr. Lin's passage from Saint Lucia to Taiwan. Thus, for practical purposes, Article 40(2) provides technical staff with diplomatic immunity in circumstances like those here.

IV.     **Taiwan Has Not Waived Mr. Lin's Immunity**

Article 32 of the Vienna Convention provides that the sending state may waive an individual's diplomatic immunity and that such "[w]aiver must always be express." VCDR art. 32, ¶¶ 1-2; *see also* State Dep't Guidance at 10. As the government concedes, Taiwan has not waived Mr. Lin's diplomatic immunity. Opp. at 3 n.3. Accordingly, Mr. Lin is immune from prosecution.

## CONCLUSION

For the reasons set forth in Mr. Lin's Opening Brief and above, the Indictment should be dismissed.

Dated: December 5, 2025
New York, New York

Respectfully submitted,

SHER TREMONTE LLP

By:  /s/ Noam Biale
Noam Biale
Katie Renzler
Michael Bass
90 Broad Street, 23rd Floor
New York, NY 10004
(212) 202-2600
nbiale@shertremonte.com
krenzler@shertremonte.com
mbass@shertremonte.com

*Attorneys for Rui-Siang Lin*