# EXHIBIT R

E. MARTIN ESTRADA
United States Attorney
MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division
GREGG E. MARMARO (Cal. Bar No. 338627)
Assistant United States Attorney
International Narcotics, Money Laundering,
 and Racketeering Section
     1400 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-8500
     Facsimile: (213) 894-0142
     E-mail:   gregg.marmaro@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 8:22-CR-00183(A)-DOC |
| Plaintiff, | PLEA AGREEMENT FOR DEFENDANT RAJIV SRINIVASAN |
| v. | |
| RAJIV SRINIVASAN, | |
| Defendant. | |

1.    This constitutes the plea agreement between RAJIV SRINIVASAN ("defendant") and the United States Attorney's Office for the Central District of California (the "USAO") in the above-captioned case.  This agreement is limited to the USAO and cannot bind any other federal, state, local, or foreign prosecuting, enforcement, administrative, or regulatory authority.

DEFENDANT'S OBLIGATIONS

2.    Defendant agrees to:

a.    Give up the right to indictment by a grand jury and, at the earliest opportunity requested by the USAO and provided by the

Court, appear and plead guilty to a two-count First Superseding Information in the form attached to this agreement as Exhibit A or a substantially similar form, which charges defendant with Conspiracy to Distribute and to Possess with Intent to Distribute Controlled Substances, in violation of 21 U.S.C. §§ 846, 841(a)(1), (b)(1)(A)(vi), (b)(1)(A)(viii), and Distribution of Fentanyl Resulting in Death, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C).

b. Not contest facts agreed to in this agreement.

c. Abide by all agreements regarding sentencing contained in this agreement.

d. Appear for all court appearances, surrender as ordered for service of sentence, obey all conditions of any bond, and obey any other ongoing court order in this matter.

e. Not commit any crime; however, offenses that would be excluded for sentencing purposes under United States Sentencing Guidelines ("U.S.S.G." or "Sentencing Guidelines") § 4A1.2(c) are not within the scope of this agreement.

f. Be truthful at all times with the United States Probation and Pretrial Services Office and the Court.

g. Pay the applicable special assessments at or before the time of sentencing unless defendant has demonstrated a lack of ability to pay such assessments.

h. Agree to and not oppose the imposition of the following conditions of supervised release:

i. The defendant shall not use or possess any virtual currency wallet or account.

ii.   The defendant shall not access or offer for sale any products on any darknet website.

iii. The defendant shall not use any software program and/or mobile device messaging application which provides for encrypted end-to-end communications.

iv.   The defendant shall disclose to the United States Probation and Pretrial Services Office all digital devices, screen names, email accounts, social media accounts, messaging applications, and cloud storage accounts, as well as any passwords or passcodes for all such digital devices and accounts, and the defendant may only use or possess such accounts.  The defendant shall disclose any new devices, accounts, applications, passwords, or passcodes, and may not use any such devices prior to obtaining approval from the United States Probation and Pretrial Services Office.

v.   The defendant shall submit defendant's person and any property under defendant's control, including any residence, vehicle, papers, computer and other electronic communication or data storage devices and media, and effects, to suspicion-less search and seizure at any time of the day or night by any law enforcement or probation officer, with or without a warrant, and with or without cause; and if stopped or questioned by a law enforcement officer for any reason, defendant shall notify that officer that defendant is on federal supervised release and subject to search.

3.   Defendant further agrees:

a.   To forfeit all right, title, and interest in and to any and all monies, properties, and/or assets of any kind, derived from or acquired as a result of, or used to facilitate the commission of, or involved in the illegal activity to which defendant is

3

pleading guilty, specifically including, but not limited to, the following (collectively, the "Forfeitable Assets"):

      i.    The following digital currencies, seized on or about November 15, 2022:

        (I)  0.52 Binance Coin (BNB)

        (II) 0.61622765 Bitcoin (BTC)

        (III)   1.1131983 Binance-Peg Bitcoin (BTCB)

        (IV) 0.02195455 Ether (ETH)

        (V)  499.50 Tether (USDT-TRX)

b.    To the Court's entry of an order of forfeiture at or before sentencing with respect to the Forfeitable Assets and to the forfeiture of the assets.

c.    To take whatever steps are necessary to pass to the United States clear title to the Forfeitable Assets, including, without limitation, the execution of a consent decree of forfeiture and the completing of any other legal documents required for the transfer of title to the United States.

d.    Not to contest any administrative forfeiture proceedings or civil judicial proceedings commenced against the Forfeitable Assets.  If defendant submitted a claim and/or petition for remission for all or part of the Forfeitable Assets on behalf of himself or any other individual or entity, defendant shall and hereby does withdraw any such claims or petitions, and further agrees to waive any right he may have to seek remission or mitigation of the forfeiture of the Forfeitable Assets.

e.    Not to assist any other individual in any effort falsely to contest the forfeiture of the Forfeitable Assets.

f. Not to claim that reasonable cause to seize the Forfeitable Assets was lacking.

g. To prevent the transfer, sale, destruction, or loss of any and all assets described above to the extent defendant has the ability to do so.

h. To fill out and deliver to the USAO a completed financial statement listing defendant's assets on a form provided by the USAO.

i. That forfeiture of Forfeitable Assets shall not be counted toward satisfaction of any special assessment, fine, restitution, costs, or other penalty the Court may impose.

j. With respect to any criminal forfeiture ordered as a result of this plea agreement, defendant waives: (1) the requirements of Federal Rules of Criminal Procedure 32.2 and 43(a) regarding notice of the forfeiture in the charging instrument, announcements of the forfeiture sentencing, and incorporation of the forfeiture in the judgment; (2) all constitutional and statutory challenges to the forfeiture (including by direct appeal, habeas corpus or any other means); and (3) all constitutional, legal, and equitable defenses to the forfeiture of the Forfeitable Assets in any proceeding on any grounds including, without limitation, that the forfeiture constitutes an excessive fine or punishment. Defendant acknowledges that forfeiture of the Forfeitable Assets is part of the sentence that may be imposed in this case and waives any failure by the Court to advise defendant of this, pursuant to Federal Rule of Criminal Procedure 11(b)(1)(J), at the time the Court accepts defendant's guilty pleas.

5

THE USAO'S OBLIGATIONS

4.   The USAO agrees to:

a.   Not contest facts agreed to in this agreement.

b.   Abide by all agreements regarding sentencing contained in this agreement.

c.   At the time of sentencing, move to dismiss the underlying indictment as against defendant.  Defendant agrees, however, that at the time of sentencing the Court may consider any dismissed charges in determining the applicable Sentencing Guidelines range, the propriety and extent of any departure from that range, and the sentence to be imposed.

d.   At the time of sentencing, provided that defendant demonstrates an acceptance of responsibility for the offenses up to and including the time of sentencing, recommend a two-level reduction in the applicable Sentencing Guidelines offense level, pursuant to U.S.S.G. § 3E1.1, and recommend and, if necessary, move for an additional one-level reduction if available under that section.

e.   Except for criminal tax violations (including conspiracy to commit such violations chargeable under 18 U.S.C. § 371), not further criminally prosecute defendant for violations of Title 21 of the United States Code arising out of defendant's conduct described in the agreed-to factual basis set forth in paragraph 21 below.  Defendant understands that the USAO is free to criminally prosecute defendant for any other unlawful past conduct or any unlawful conduct that occurs after the date of this agreement. Defendant agrees that at the time of sentencing the Court may consider the uncharged conduct in determining the applicable Sentencing Guidelines range, the propriety and extent of any

6

departure from that range, and the sentence to be imposed after consideration of the Sentencing Guidelines and all other relevant factors under 18 U.S.C. § 3553(a).

<u>NATURE OF THE OFFENSES</u>

5. Defendant understands that for defendant to be guilty of the crime charged in Count One of the First Superseding Information, that is, Conspiracy to Distribute and to Possess with Intent to Distribute Controlled Substances, in violation of 21 U.S.C. §§ 846 and 841(a)(1), the following must be true: (1) there was an agreement between two or more persons to distribute and to possess with intent to distribute controlled substances; and (2) defendant joined in the agreement knowing of its purpose and intending to help accomplish that purpose.

6. Defendant understands that for defendant to be subject to the statutory maximum and statutory minimum sentences set forth below as to Count One, the government must prove beyond a reasonable doubt that the conspiracy in which defendant participated involved at least 400 grams of a mixture or substance containing a detectable amount of N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide ("fentanyl"), or at least 50 grams of methamphetamine. Defendant admits that defendant, in fact, knowingly and intentionally conspired to distribute and to possess with intent to distribute at least 400 grams of fentanyl and at least 50 grams of methamphetamine, as described in Count One of the First Superseding Information.

7. Defendant further understands that the law may require the government to prove beyond a reasonable doubt that the type and quantity of the charged controlled substances fell within the scope of defendant's agreement and were reasonably foreseeable to

7

defendant. Defendant admits that the distribution of and possession with intent to distribute at least 400 grams of fentanyl and at least 50 grams of methamphetamine fell within the scope of defendant's agreement and were reasonably foreseeable to him.

8. Defendant understands that for defendant to be guilty of the crime charged in Count Two of the First Superseding Information, that is, distribution of fentanyl resulting in death, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C), the following must be true: (1) defendant knowingly distributed fentanyl; (2) defendant knew it was fentanyl or some other federally controlled substance; and (3) death or serious bodily injury resulted from the use of such fentanyl.

9. Defendant understands that for defendant to be subject to the statutory maximum and statutory minimum sentences set forth below as to Count Two, the government must prove beyond a reasonable doubt that death or serious bodily injury resulted from the use of a federally controlled substance that defendant distributed. Defendant admits that defendant, in fact, distributed a federally controlled substance, the use of which resulted in death, as charged in Count Two of the First Superseding Information.

PENALTIES AND RESTITUTION

10. Defendant understands that the statutory maximum sentence that the Court can impose for a violation of 21 U.S.C. §§ 846, 841(a)(1), (b)(1)(A), as charged in Count One of the First Superseding Information, is: life imprisonment; a lifetime period of supervised release; a fine of $10,000,000 or twice the gross gain or gross loss resulting from the offense, whichever is greatest, and a mandatory special assessment of $100.

8

11.  Defendant understands that the statutory mandatory minimum sentence that the Court must impose for a violation of 21 U.S.C. §§ 846, 841(a)(1), (b)(1)(A), as charged in Count One of the First Superseding Information, is: ten years' imprisonment, followed by a five-year period of supervised release, and a mandatory special assessment of $100.

12.  Defendant understands that the statutory maximum sentence that the Court can impose for a violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C), resulting in death, as charged in Count Two of the First Superseding Information, is: life imprisonment; a lifetime period of supervised release; a fine of $1,000,000 or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $100.

13.  Defendant understands that the statutory mandatory minimum sentence that the Court must impose for a violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C), resulting in death, as charged in Count Two of the First Superseding Information, is: 20 years' imprisonment, followed by a three-year period of supervised release, and a mandatory special assessment of $100.

14.  Defendant understands, therefore, that the total maximum sentence for all offenses to which defendant is pleading guilty is: life imprisonment; a lifetime period of supervised release; a fine of $11,000,000 or twice the gross gain or gross loss resulting from the offenses, whichever is greatest; and a mandatory special assessment of $200.

15.  Defendant understands, therefore, that the total statutory mandatory minimum sentence that the Court must impose for all offenses to which defendant is pleading guilty is: 20 years'

9

imprisonment, followed by a five-year period of supervised release, and a mandatory special assessment of $200.

16. Defendant understands that defendant will be required to pay full restitution to the victims of the offenses to which defendant is pleading guilty. Defendant agrees that, in return for the USAO's compliance with its obligations under this agreement, the Court may order restitution to persons other than the victims of the offenses to which defendant is pleading guilty and in amounts greater than those alleged in the counts to which defendant is pleading guilty. In particular, defendant agrees that the Court may order restitution to any victim of any of the following for any losses suffered by that victim as a result: (a) any relevant conduct, as defined in U.S.S.G. § 1B1.3, in connection with the offenses to which defendant is pleading guilty; and (b) any counts dismissed and charges not prosecuted pursuant to this agreement as well as all relevant conduct, as defined in U.S.S.G. § 1B1.3, in connection with those counts and charges.

17. Defendant understands that under 21 U.S.C. § 862a, defendant will not be eligible for assistance under state programs funded under the Social Security Act or Federal Food Stamp Act or for federal food stamp program benefits, and that any such benefits or assistance received by defendant's family members will be reduced to reflect defendant's ineligibility

18. Defendant understands that supervised release is a period of time following imprisonment during which defendant will be subject to various restrictions and requirements. Defendant understands that if defendant violates one or more of the conditions of any supervised release imposed, defendant may be returned to prison for all or part

10

of the term of supervised release authorized by statute for the offense that resulted in the term of supervised release.

19. Defendant understands that, by pleading guilty, defendant may be giving up valuable government benefits and valuable civic rights, such as the right to vote, the right to possess a firearm, the right to hold office, and the right to serve on a jury. Defendant understands that he is pleading guilty to a felony and that it is a federal crime for a convicted felon to possess a firearm or ammunition. Defendant understands that the convictions in this case may also subject defendant to various other collateral consequences, including but not limited to revocation of probation, parole, or supervised release in another case and suspension or revocation of a professional license. Defendant understands that unanticipated collateral consequences will not serve as grounds to withdraw defendant's guilty pleas.

20. Defendant and his counsel have discussed the fact that, and defendant understands that, if defendant is not a United States citizen, the convictions in this case make it practically inevitable and a virtual certainty that defendant will be removed or deported from the United States. Defendant may also be denied United States citizenship and admission to the United States in the future. Defendant understands that while there may be arguments that defendant can raise in immigration proceedings to avoid or delay removal, removal is presumptively mandatory and a virtual certainty in this case. Defendant further understands that removal and immigration consequences are the subject of a separate proceeding and that no one, including his attorney or the Court, can predict to an absolute certainty the effect of his convictions on his immigration

11

status.  Defendant nevertheless affirms that he wants to plead guilty regardless of any immigration consequences that his pleas may entail, even if the consequence is automatic removal from the United States.

FACTUAL BASIS

21.  Defendant admits that defendant is, in fact, guilty of the offenses to which defendant is agreeing to plead guilty.  Defendant and the USAO agree to the statement of facts provided below and agree that this statement of facts is sufficient to support pleas of guilty to the charges described in this agreement and to establish the Sentencing Guidelines factors set forth in paragraph 23 below but is not meant to be a complete recitation of all facts relevant to the underlying criminal conduct or all facts known to either party that relate to that conduct.

a.  Beginning on a date unknown and continuing to on or about November 15, 2022, in Los Angeles and Orange Counties, within the Central District of California, and elsewhere, defendant RAJIV SRINIVASAN conspired with Michael Ta, and others, to knowingly and intentionally distribute and to possess with intent to distribute controlled substances, including at least 400 grams of a mixture or substance containing a detectable amount of fentanyl, a Schedule II narcotic drug controlled substance, and at least 50 grams of methamphetamine, a Schedule II controlled substance.

b.  As a member of the conspiracy, and in furtherance of its goals, defendant operated the account "redlightlabs" on the dark web to advertise and accept orders for controlled substances. Defendant also used the encrypted messaging application "Wickr" to communicate with and sell controlled substances to customers. Defendant received virtual currency from customers as payment for

12

controlled substances and routed virtual currency he had received from drug customers through cryptocurrency exchanges. Defendant communicated with Ta regarding the distribution of controlled substances, including sending information to Ta to mail controlled substances to customers who had ordered those drugs from defendant and Ta. Defendant arranged for his sources of supply, Co-Conspirator 1 and Co-Conspirator 2, to deliver controlled substances to Ta for distribution to customers. Ta then mailed parcels containing controlled substances to customers who had ordered those drugs from defendant. Defendant paid Ta for distributing controlled substances to customers that had been ordered from defendant, and defendant paid Co-Conspirator 1 and Co-Conspirator 2 for supplying those drugs to Ta for distribution. Defendant and Ta possessed digital devices and maintained a shared electronic document to coordinate the distribution of controlled substances.

c. Defendant mass marketed purported "M30" pills which he knew in fact contained fentanyl through multiple dark web marketplaces, including Dark0de, Torrez, Abacus, Tor2Door, ASAP, Alphabay, Archetyp, and Incognito. By operating on the dark web, defendant utilized extensive, sophisticated, and widely available criminal marketplaces to sell drugs with greater anonymity than would have been possible on the traditional Internet. A typical dark web advertisement from defendant read as follows: "pressed oxycodone m30 pill (x100). 100x Quality PRESSED Oxycodone M30 pill. Professional press; M30 Stamp with nice gloss and aesthetic appeal; able to be used orally, nasally, or IV. *WARNING* These pills SMACK HARD!" The advertisements noted that these pills "are a professional press with a very potent opioid."

13

Case 8:21-cr-00180-DOC Document 58 Filed 04/20/23 Page 4 of 26 Page ID
Case 2:24-cv-01800-DOC-JCM Document 570-16 Filed 04/20/23/19/26 Page 135 of 36 Page ID
#:332

d.    Defendant utilized several other sophisticated methods to conceal his drug distribution and avoid detection from law enforcement, including communicating with drug customers through end-to-end encrypted messaging applications such as "Wickr."  Defendant also used cryptocurrency as a medium of exchange with drug customers and suppliers, which he routed through multiple different cryptocurrency exchanges, both legitimate and illicit, in order to disguise the criminal nature of the proceeds.

e.    In furtherance of this conspiracy, defendant and his co-conspirators committed at least the following overt acts:

i.    Between no later than February 7, 2022, and continuing to November 15, 2022, defendant and Ta knowingly and intentionally engaged in at least 3,800 drug transactions to approximately 1,500 unique customers across the country, totaling at least 123,688 pills resembling M30 pills which in fact contained fentanyl, 9,363 grams of methamphetamine, 299 grams of "China white" (fentanyl powder), 296 grams of black tar heroin, and 27 grams of cocaine.  On fourteen of those transactions between February and November of 2022, defendant, working with Ta and others, accepted orders for and distributed fentanyl pills to an individual who defendant believed to be a drug customer, but who was in fact an undercover law enforcement agent (the "UC").

ii.    Through his participation in this conspiracy, defendant and Ta caused the overdose deaths of the following three individuals:

(I)    N.M., of Fort Collins, Colorado, who died of a fentanyl overdose on or about October 23, 2022, at the age of 19 years old.  On or about October 18, 2022, defendant and Ta accepted

14

an order from N.M. for 50 "M30" pills containing fentanyl, which Ta shipped to N.M. on the same date. N.M. ingested some of those pills, and the use of such pills resulted in N.M.'s death and serious bodily injury. Fentanyl is a Schedule II narcotic drug controlled substance, and defendant knew that he distributed a federally controlled substance and intended to do so. But for the use of the fentanyl that defendant distributed, victim N.M. would have lived.

(II) K.M., of The Villages, Florida, who died of a fentanyl overdose on or about August 17, 2022, at the age of 51 years old. On or about August 11, 2022, defendant and Ta accepted an order from K.M. for 20 "M30" pills containing fentanyl, which Ta shipped to K.M. on the same date. K.M. ingested some of those pills, and the use of such pills resulted in K.M.'s death and serious bodily injury. But for the use of the fentanyl that defendant distributed, victim K.M. would have lived.

(III) D.R.C., of Fayetteville, Arkansas, who died of a fentanyl overdose on or about September 13, 2022, at the age of 27 years old. On or about September 7, 2022, defendant and Ta accepted an order from D.R.C. for 15 "M30" pills containing fentanyl, which Ta shipped to D.R.C. the next day. D.R.C. ingested some of those pills, and the use of such pills resulted in D.R.C.'s death and serious bodily injury. But for the use of the fentanyl that defendant distributed, victim D.C. would have lived.

iii. Additionally, through his participation in this conspiracy, defendant and Ta distributed fentanyl-laced pills to the following two individuals, who died of drug overdoses shortly after receiving the fentanyl-laced pills from defendant and Ta:

15

(I)  J.D., of Livonia, Michigan, who died of a fentanyl overdose on or about June 13, 2022, at the age of 42 years old.  On or about June 9, 2022, defendant and Ta accepted an order from J.D. for 30 "M30" pills containing fentanyl, which Ta shipped to J.D. the next day.

(II) N.H., of Santa Cruz, California, who died of a fentanyl overdose on or about October 21, 2022, at the age of 31 years old.  On or about October 15, 2022, defendant and Ta accepted an order from N.H. for six "M30" pills containing fentanyl, which Ta shipped to N.H. on the same date.

SENTENCING FACTORS

22.  Defendant understands that in determining defendant's sentence the Court is required to calculate the applicable Sentencing Guidelines range and to consider that range, possible departures under the Sentencing Guidelines, and the other sentencing factors set forth in 18 U.S.C. § 3553(a).  Defendant understands that the Sentencing Guidelines are advisory only, that defendant cannot have any expectation of receiving a sentence within the calculated Sentencing Guidelines range, and that after considering the Sentencing Guidelines and the other § 3553(a) factors, the Court will be free to exercise its discretion to impose any sentence it finds appropriate between the mandatory minimum and up to the maximum set by statute for the crimes of conviction.

23.  Defendant and the USAO agree to the following applicable Sentencing Guidelines factors:

| | | |
|---|---|---|
| Base Offense Level: | 38 | [U.S.S.G. § 2D1.1(a)(2)] |
| Mass-marketing by means of an interactive computer service: | +2 | [U.S.S.G. § 2D1.1(b)(7)] |

Defendant and the USAO reserve the right to argue that additional specific offense characteristics, adjustments, and departures under the Sentencing Guidelines are appropriate; however, defendant and the USAO agree not to seek, argue, or suggest in any way, either orally or in writing, that the specific offense characteristic under U.S.S.G. § 2D1.1(b)(13) be imposed.

24. Defendant understands that there is no agreement as to defendant's criminal history or criminal history category.

25. Defendant and the USAO reserve the right to argue for a sentence outside the sentencing range established by the Sentencing Guidelines based on the factors set forth in 18 U.S.C. § 3553(a)(1), (a)(2), (a)(3), (a)(6), and (a)(7).

<u>WAIVER OF CONSTITUTIONAL RIGHTS</u>

26. Defendant understands that by pleading guilty, defendant gives up the following rights:

    a. The right to persist in a plea of not guilty.

    b. The right to a speedy and public trial by jury.

    c. The right to be represented by counsel -- and if necessary have the Court appoint counsel -- at trial. Defendant understands, however, that, defendant retains the right to be represented by counsel -- and if necessary have the Court appoint counsel -- at every other stage of the proceeding.

    d. The right to be presumed innocent and to have the burden of proof placed on the government to prove defendant guilty beyond a reasonable doubt.

    e. The right to confront and cross-examine witnesses against defendant.

17

f.   The right to testify and to present evidence in opposition to the charges, including the right to compel the attendance of witnesses to testify.

g.   The right not to be compelled to testify, and, if defendant chose not to testify or present evidence, to have that choice not be used against defendant.

h.   Any and all rights to pursue any affirmative defenses, Fourth Amendment or Fifth Amendment claims, and other pretrial motions that have been filed or could be filed.

### WAIVER OF VENUE

27.   Having been fully advised by defendant's attorney regarding the requirements of venue with respect to the offenses to which defendant is pleading guilty, to the extent the offenses to which defendant is pleading guilty were committed, begun, or completed outside the Central District of California, defendant knowingly, voluntarily, and intelligently waives, relinquishes, and gives up: (a) any right that defendant might have to be prosecuted only in the district where the offenses to which defendant is pleading guilty were committed, begun, or completed; and (b) any defense, claim, or argument defendant could raise or assert based upon lack of venue with respect to the offenses to which defendant is pleading guilty.

### WAIVER OF APPEAL OF CONVICTION

28.   Defendant understands that, with the exception of an appeal based on a claim that defendant's guilty pleas were involuntary, by pleading guilty defendant is waiving and giving up any right to appeal defendant's convictions on the offenses to which defendant is pleading guilty.  Defendant understands that this waiver includes, but is not limited to, arguments that the statutes to which defendant

18

is pleading guilty are unconstitutional, and any and all claims that the statement of facts provided herein is insufficient to support defendant's pleas of guilty.

WAIVER OF APPEAL OF SENTENCE AND COLLATERAL ATTACK

29. Defendant gives up the right to appeal all of the following: (a) the procedures and calculations used to determine and impose any portion of the sentence; (b) the term of imprisonment imposed by the Court, including, to the extent permitted by law, the constitutionality or legality of defendant's sentence, provided it is within the statutory maximum; (c) the fine imposed by the Court, provided it is within the statutory maximum; (d) the term of probation or supervised release imposed by the Court, provided it is within the statutory maximum; and (e) any of the following conditions of probation or supervised release imposed by the Court: the conditions set forth in Second Amended General Order 20-04 of this Court; the drug testing conditions mandated by 18 U.S.C. §§ 3563(a)(5) and 3583(d); the alcohol and drug use conditions authorized by 18 U.S.C. § 3563(b)(7); and any conditions of probation or supervised release agreed to by defendant in paragraph 2 above.

30. Defendant also gives up any right to bring a post-conviction collateral attack on the convictions or sentence, including any order of restitution, except a post-conviction collateral attack based on a claim of ineffective assistance of counsel, a claim of newly discovered evidence, or an explicitly retroactive change in the applicable Sentencing Guidelines, sentencing statutes, or statutes of conviction. Defendant understands that this waiver includes, but is not limited to, arguments that the statutes to which defendant is pleading guilty are

unconstitutional, and any and all claims that the statement of facts provided herein is insufficient to support defendant's pleas of guilty.

31. This agreement does not affect in any way the right of the USAO to appeal the sentence imposed by the Court.

<u>RESULT OF WITHDRAWAL OF GUILTY PLEA</u>

32. Defendant agrees that if, after entering guilty pleas pursuant to this agreement, defendant seeks to withdraw and succeeds in withdrawing defendant's guilty pleas on any basis other than a claim and finding that entry into this plea agreement was involuntary, then (a) the USAO will be relieved of all of its obligations under this agreement; and (b) should the USAO choose to pursue any charge that was either dismissed or not filed as a result of this agreement, then (i) any applicable statute of limitations will be tolled between the date of defendant's signing of this agreement and the filing commencing any such action; and (ii) defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

<u>RESULT OF VACATUR, REVERSAL OR SET-ASIDE</u>

33. Defendant agrees that if any count of conviction is vacated, reversed, or set aside, the USAO may: (a) ask the Court to resentence defendant on any remaining counts of conviction, with both the USAO and defendant being released from any stipulations regarding sentencing contained in this agreement, (b) ask the Court to void the entire plea agreement and vacate defendant's guilty pleas on any

20

remaining counts of conviction, with both the USAO and defendant being released from all their obligations under this agreement, or (c) leave defendant's remaining convictions, sentence, and plea agreement intact. Defendant agrees that the choice among these three options rests in the exclusive discretion of the USAO.

## EFFECTIVE DATE OF AGREEMENT

34. This agreement is effective upon signature and execution of all required certifications by defendant, defendant's counsel, and an Assistant United States Attorney.

## BREACH OF AGREEMENT

35. Defendant agrees that if defendant, at any time after the signature of this agreement and execution of all required certifications by defendant, defendant's counsel, and an Assistant United States Attorney, knowingly violates or fails to perform any of defendant's obligations under this agreement ("a breach"), the USAO may declare this agreement breached. All of defendant's obligations are material, a single breach of this agreement is sufficient for the USAO to declare a breach, and defendant shall not be deemed to have cured a breach without the express agreement of the USAO in writing. If the USAO declares this agreement breached, and the Court finds such a breach to have occurred, then: (a) if defendant has previously entered guilty pleas pursuant to this agreement, defendant will not be able to withdraw the guilty pleas, and (b) the USAO will be relieved of all its obligations under this agreement.

36. Following the Court's finding of a knowing breach of this agreement by defendant, should the USAO choose to pursue any charge that was either dismissed or not filed as a result of this agreement, then:

21

a. Defendant agrees that any applicable statute of limitations is tolled between the date of defendant's signing of this agreement and the filing commencing any such action.

b. Defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

c. Defendant agrees that: (i) any statements made by defendant, under oath, at the guilty plea hearing (if such a hearing occurred prior to the breach); (ii) the agreed to factual basis statement in this agreement; and (iii) any evidence derived from such statements, shall be admissible against defendant in any such action against defendant, and defendant waives and gives up any claim under the United States Constitution, any statute, Rule 410 of the Federal Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal Procedure, or any other federal rule, that the statements or any evidence derived from the statements should be suppressed or are inadmissible.

<u>COURT AND UNITED STATES PROBATION AND PRETRIAL SERVICES</u>

<u>OFFICE NOT PARTIES</u>

37. Defendant understands that the Court and the United States Probation and Pretrial Services Office are not parties to this agreement and need not accept any of the USAO's sentencing recommendations or the parties' agreements to facts or sentencing factors.

38. Defendant understands that both defendant and the USAO are free to: (a) supplement the facts by supplying relevant information

to the United States Probation and Pretrial Services Office and the Court, (b) correct any and all factual misstatements relating to the Court's Sentencing Guidelines calculations and determination of sentence, and (c) argue on appeal and collateral review that the Court's Sentencing Guidelines calculations and the sentence it chooses to impose are not error, although each party agrees to maintain its view that the calculations in paragraph 23 are consistent with the facts of this case. While this paragraph permits both the USAO and defendant to submit full and complete factual information to the United States Probation and Pretrial Services Office and the Court, even if that factual information may be viewed as inconsistent with the facts agreed to in this agreement, this paragraph does not affect defendant's and the USAO's obligations not to contest the facts agreed to in this agreement.

39. Defendant understands that even if the Court ignores any sentencing recommendation, finds facts or reaches conclusions different from those agreed to, and/or imposes any sentence up to the maximum established by statute, defendant cannot, for that reason, withdraw defendant's guilty pleas, and defendant will remain bound to fulfill all defendant's obligations under this agreement. Defendant understands that no one -- not the prosecutor, defendant's attorney, or the Court -- can make a binding prediction or promise regarding the sentence defendant will receive, except that it will be between the statutory mandatory minimum and within the statutory maximum.

NO ADDITIONAL AGREEMENTS

40. Defendant understands that, except as set forth herein and in any contemporaneous agreement or addendum signed by all parties, there are no promises, understandings, or agreements between the USAO

23

and defendant or defendant's attorney, and that no additional promise, understanding, or agreement may be entered into unless in a writing signed by all parties or on the record in court.

<u>PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING</u>

41.  The parties agree that this agreement will be considered part of the record of defendant's guilty plea hearing as if the entire agreement had been read into the record of the proceeding.

AGREED AND ACCEPTED

UNITED STATES ATTORNEY'S OFFICE
FOR THE CENTRAL DISTRICT OF
CALIFORNIA

E. MARTIN ESTRADA
United States Attorney

_____   4/20/2023
GREGG E. MARMARO                   Date
Assistant United States Attorney

_____   4/17/23
RAJIV SRINIVASAN                   Date
Defendant

_____   4/17/23
JESSICA CLAIRE MUNK                Date
Attorney for Defendant RAJIV
SRINIVASAN

## CERTIFICATION OF DEFENDANT

I have read this agreement in its entirety. I have had enough time to review and consider this agreement, and I have carefully and thoroughly discussed every part of it with my attorney. I understand the terms of this agreement, and I voluntarily agree to those terms. I have discussed the evidence with my attorney, and my attorney has advised me of my rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement. No promises, inducements, or representations of any kind have been made to me other than those contained in this agreement or in an agreement signed by all parties or on the record in court. No one has threatened or forced me in any way to enter into this agreement. I am satisfied with the representation of my attorney in this matter, and I am pleading guilty because I am guilty of the charges and wish to take advantage of the promises set forth in this agreement, and not for any other reason.

_____     4/17/23
RAJIV SRINIVASAN                     _____
Defendant                            Date

25

## CERTIFICATION OF DEFENDANT'S ATTORNEY

I am RAJIV SRINIVASAN's attorney. I have carefully and thoroughly discussed every part of this agreement with my client. Further, I have fully advised my client of his rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement. To my knowledge: no promises, inducements, or representations of any kind have been made to my client other than those contained in this agreement or in an agreement signed by all parties or on the record in court; no one has threatened or forced my client in any way to enter into this agreement; my client's decision to enter into this agreement is informed and voluntary; and the factual basis set forth in this agreement is sufficient to support my client's entry of guilty pleas, pursuant to this agreement.

_____     4/17/23
JESSICA CLAIRE MUNK                    Date
Attorney for Defendant
RAJIV SRINIVASAN

26

# EXHIBIT A

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>            Plaintiff,<br><br>            v.<br><br>RAJIV SRINIVASAN,<br>  aka "redlightlabs,"<br><br>            Defendant. | No. 8:22-CR-00183(A)-DOC<br><br>F I R S T<br>S U P E R S E D I N G<br>I N F O R M A T I O N<br><br>[21 U.S.C. § 846: Conspiracy to Distribute and to Possess with Intent to Distribute Controlled Substances; 21 U.S.C. §§ 841(a)(1), (b)(1)(C): Distribution of Fentanyl Resulting in Death; 21 U.S.C. § 853: Criminal Forfeiture] |

The United States Attorney charges:

COUNT ONE

[21 U.S.C. § 846]

A.   <u>OBJECTS OF THE CONSPIRACY</u>

Beginning on a date unknown and continuing to on or about November 15, 2022, in Los Angeles and Orange Counties, within the Central District of California, and elsewhere, defendant RAJIV SRINIVASAN, also known as ("aka") "redlightlabs," conspired with Michael Ta, and others known and unknown to the United States Attorney, to knowingly and intentionally distribute and to possess with intent to distribute the following controlled substances:

1.    At least 400 grams of a mixture or substance containing a detectable amount of N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide ("fentanyl"), a Schedule II narcotic drug controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1), (b)(1)(A)(vi); and

2.    At least 50 grams of methamphetamine, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1), (b)(1)(A)(viii).

B.    MANNER AND MEANS OF THE CONSPIRACY

The objects of the conspiracy were to be accomplished, in substance, as follows:

1.    Defendant SRINIVASAN would operate the account "redlightlabs" on the dark web to advertise and accept orders for controlled substances.

2.    Defendant SRINIVASAN would use the encrypted messaging application "Wickr" to communicate with and sell controlled substances to customers.

3.    Defendant SRINIVASAN would receive virtual currency from customers as payment for controlled substances.

4.    Defendant SRINIVASAN would route virtual currency he had received from drug customers through cryptocurrency exchanges.

5.    Defendant SRINIVASAN would communicate with Ta regarding the distribution of controlled substances, including sending information to Ta to mail controlled substances to customers who had ordered those drugs from defendant SRINIVASAN.

6.    Defendant SRINIVASAN would arrange for his sources of supply, Co-Conspirator 1 and Co-Conspirator 2, to deliver controlled substances to Ta for distribution to customers.

7. Ta would mail parcels containing controlled substances to customers who had ordered those drugs from defendant SRINIVASAN.

8. Defendant SRINIVASAN would pay Ta for distributing controlled substances to customers that had been ordered from defendant SRINIVASAN, and defendant SRINIVASAN would pay Co-Conspirator 1 and Co-Conspirator 2 for supplying those drugs to Ta for distribution.

9. Defendant SRINIVASAN and Ta would possess digital devices and would maintain a shared electronic document to coordinate the distribution of controlled substances.

C. OVERT ACTS

In furtherance of the conspiracy and to accomplish its objects, on or about the following dates, defendant SRINIVASAN, Ta, and others known and unknown to the United States Attorney, committed various overt acts within the Central District of California, and elsewhere, including, but not limited to, the following:

1. On or before February 7, 2022, defendant SRINIVASAN, as the vendor "redlightlabs" on the dark web marketplace "Dark0de," advertised for sale a 10-pack of pills resembling M30 oxycodone pills.

2. On February 7, 2022, defendant SRINIVASAN accepted an order for 10 pills resembling M30 oxycodone pills from an individual he believed to be a drug customer, but who was in fact an undercover law enforcement agent (the "UC").

3. On February 8, 2022, Ta dropped off a parcel containing approximately 10 pills resembling M30 oxycodone pills that weighed approximately 1.111 grams and contained fentanyl at the United States Post Office in Canoga Park, California, for mailing to a customer who

3

had purchased those pills from defendant SRINIVASAN, which, in fact, had been purchased by the UC.

4. On or about October 18, 2022, defendant SRINIVASAN and Ta accepted an order for 50 pills resembling M30 pills which in fact contained fentanyl from N.M., of Fort Collins, Colorado.

5. On or about October 18, 2022, Ta shipped a parcel containing 50 pills resembling M30 pills which in fact contained fentanyl to N.M., who later ingested some of those pills and died of a fentanyl overdose on or about October 23, 2022.

6. On November 8, 2022, using coded language in a Wickr conversation, defendant SRINIVASAN agreed to sell 1,000 pills resembling M30 oxycodone pills which in fact contained fentanyl to the UC.

7. On November 9, 2022, Ta dropped off a parcel containing approximately 1,000 pills resembling M30 oxycodone pills that weighed approximately 108.76 grams and contained fentanyl at the United States Post Office in Huntington Beach, California, for mailing to the UC.

8. On November 15, 2022, in his residence in Westminster, California, Ta possessed with the intent to distribute approximately 181.79 grams of fentanyl, approximately 391 grams of methamphetamine, and a digital device containing customer and shipping information relating to drug transactions for the "redlightlabs" account.

9. On or about November 15, 2022, defendant SRINIVASAN possessed, in his residence, digital devices containing a shared electronic document, to which Ta also had access, which detailed approximately 3,800 drug transactions to approximately 1,500 unique customers, totaling approximately 123,688 fentanyl pills, 9,363 grams

4

of methamphetamine, 299 grams of "China white," 296 grams of black tar heroin, and 27 grams of cocaine, which occurred between May 2022 and November 2022.

COUNT TWO

[21 U.S.C. §§ 841(a)(1), (b)(1)(C); 18 U.S.C. § 2(b)]

On or about October 18, 2022, in Los Angeles and Orange Counties, within the Central District of California, and elsewhere, defendant RAJIV SRINIVASAN, aka "redlightlabs," knowingly and intentionally distributed, and willfully caused to be distributed, N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide ("fentanyl"), a Schedule II narcotic drug controlled substance, the use of which resulted in the death and serious bodily injury of N.M.

6

FORFEITURE ALLEGATION

[21 U.S.C. § 853]

1.    Pursuant to Rule 32.2(a) of the Federal Rules of Criminal Procedure, notice is hereby given that the United States of America will seek forfeiture as part of any sentence, pursuant to Title 21, United States Code, Section 853, in the event of the defendant's conviction of the offenses set forth in either of Counts One or Two of this First Superseding Information.

2.    The defendant, if so convicted, shall forfeit to the United States of America the following:

(a)  All right, title and interest in any and all property, real or personal, constituting or derived from, any proceeds which the defendant obtained, directly or indirectly, from any such offense;

(b)  All right, title and interest in any and all property, real or personal, used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of any such offense; and

(c)  To the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraphs (a) and (b).

3.    Pursuant to Title 21, United States Code, Section 853(p), the defendant, if so convicted, shall forfeit substitute property if, by any act or omission of the defendant, the property described in the preceding paragraph, or any portion thereof: (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to, or deposited with a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been substantially diminished

7

in value; or (e) has been commingled with other property that cannot be divided without difficulty.

E. MARTIN ESTRADA
United States Attorney

MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division

J. MARK CHILDS
Assistant United States Attorney
Chief, International Narcotics,
  Money Laundering, and
  Racketeering Section

CHRISTOPHER C. KENDALL
Assistant United States Attorney
Deputy Chief, International
  Narcotics, Money Laundering, and
  Racketeering Section

GREGG E. MARMARO
Assistant United States Attorney
International Narcotics, Money
  Laundering, and Racketeering
  Section

8